348 So.2d 1286 (1977)
LOUIS DREYFUS CORPORATION
v.
CONTINENTAL GRAIN COMPANY.
No. 8578.
Court of Appeal of Louisiana, Fourth Circuit.
August 1, 1977.
*1287 Lemle, Kelleher, Kohlmeyer & Matthews, Charles Kohlmeyer, Jr., Earl S. Eichin, Jr., New Orleans, for Continental Grain Co., defendant-appellee.
Monroe & Lemann, W. Malcolm Stevenson, Michael R. O'Keefe, III, New Orleans, for Louis Dreyfus Corp., plaintiff-appellant.
Before SAMUEL, BOUTALL and SCHOTT, JJ.
BOUTALL, Judge.
Plaintiff Louis Dreyfus Corporation appeals a judgment of the trial court which dismissed plaintiff's rule for a preliminary writ of injunction. Plaintiff sought to enjoin the defendant from refusing to sell certain grain commodities to the plaintiff and refusing to buy from plaintiff, allegedly in breach of an agreement between the parties.
The parties to this action had entered into a contract for the purchase and resale of certain grain commodities. In general, the Louis Dreyfus Corporation (Dreyfus) bound itself to sell certain amounts of grain commodities to Continental Grain Company, to be received in barges on the upper rivers above the Mississippi River and transported to Continental's Westwego Grain Elevator. Dreyfus would then purchase the very same grain commodities sold to Continental, or grain commodities similar in kind and grade, at basically the same price as the price paid by Continental for the grain to Dreyfus to be loaded on Dreyfus ships at Westwego. The only price difference between the grain as it was sold from Dreyfus to Continental and Continental back to Dreyfus was to be a five cent per bushel elevator charge for storing the grain and loading it onto ships plus a 1% over prime interest rate for the time interval between sale and resale.
In February and March, 1977 Dreyfus placed orders per the agreement for the delivery of various amounts of grain to be loaded at the defendant's Westwego elevator. However, the barges carrying the grain to be sold by Dreyfus to Continental and to be put through the Westwego elevator were unable to move downriver because the river was blocked and frozen over with ice between Cairo, Illinois, and St. Louis, Missouri. Accordingly, Continental notified Dreyfus that Continental would suspend the performance of the February and March orders by invoking the Force Majeure clause, Section 9.1 of the contract. Section 9.1 says:
"A party shall not be liable for nonperformance or delay in performance due in whole or in part to any cause either not within its control or which it could not by reasonable diligence have avoided. (A strike shall not be deemed within the control of a party.) Upon the occurrence of any such contingency, the party so affected shall have the right to suspend or delay performance under this Agreement during the period of such contingency and if such contingency affects the quantities of grain which in any period may be sold by Dreyfus or purchased and sold by Continental or purchased by Dreyfus, Dreyfus' obligations and Continental's obligations hereunder in that regard shall be accordingly reduced."
*1288 Upon receipt of Continental's notice of intent not to sell grain for the February, March orders, Dreyfus filed suit. Dreyfus' petition was entitled "Petition for Temporary Restraining Order, Petition for Injunction, Petition for Specific Performance, Petition for Damages."
The trial judge refused to sign the temporary restraining order, but tried the rule for the preliminary injunction two days later. After trial, the plaintiff's rule for a preliminary writ of injunction was dismissed.
On appeal, plaintiff raises numerous issues relative to plaintiff's right to specific performance and the parties' contractual obligations. However, the sole issue before us is the correctness of the judgment of the trial court which denied the plaintiff's request for a preliminary injunction. All other issues are part of the merits and were not before the trier of fact. Similarly, neither are those issues before us on appeal.
As for the issue of the trial court's denial of the preliminary injunction, we note that the granting of a preliminary injunction is only an interlocutory judgment designed to prevent a party from suffering irreparable harm pending a final determination of his rights and in such cases to generally maintain and preserve the existing status pending a trial of the issues on the merits; the question of whether the preliminary injunction should be granted or refused is one which addresses itself to the sound discretion of the trial court. City of New Orleans v. Delta-By-Products, Inc., La.App., 177 So.2d 395 (1965).
Article 3601 of the Louisiana Code of Civil Procedure provides, in part:
"An injunction shall issue in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law; . . . ."
* * * * * *
Our review of the record convinces us that the plaintiff failed to demonstrate irreparable injury, loss, or damage occasioned by defendant's suspension of the agreement. Mr. Steve Lucas, a merchandiser for Dreyfus in charge of logistics, handling and trading, testified that the vessels nominated by Dreyfus to receive the grain at the Westwego elevator had in fact been sent elsewhere to load the grain for the February and March orders and thus, those commitments were tentatively filled. Mike Robinson, a Dreyfus employee with the duty to insure that Dreyfus' position with grain commodities remained stable, testified that at this point in time it was impossible to tell what damage had been done by Continental's refusal to fill the February and March orders. Robinson additionally acknowledged that the vessels nominated to load the grain at Westwego had gone elsewhere to load the grain.
In opposition, defendant's evidence was to the effect that the agreement was that Dreyfus was to furnish the grain to be loaded and that grain was blocked in the ice-bound river, incapable of being moved. As a result one of the parties faced a loss due to price increase and demurrage. Under these circumstances, the matter or question of damages resulting from Continental's alleged breach of contract should be referred to the merits. At the trial of the merits the plaintiff will have the opportunity to prove the validity of the contract and any breach thereof and damages, if any, resulting from such breach.
Additionally, we note that the relief sought is in fact a mandatory injunction for specific performance of the contract. The issuance of a preliminary injunction would compel Continental to perform the terms of an agreement which Continental claims to be suspended by the very terms of the agreement itself. There is an equal risk of irreparable harm to Continental. Such a dispute can best be resolved at trial on the merits.
We do not find that the trial judge abused his discretion in his dismissal of the plaintiff's rule for a writ of preliminary injunction. Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.