SCHOTT, Judge.
We grant certiorari on the application of Continental Grain Company (Continental) in order to consider a judgment of the trial court which denied Continental’s rule for permission to file an amended reconventional demand.
The case involves a contract for the purchase and sale of grain between the parties and has already been before us on an appeal by Louis Dreyfus Corporation (Dreyfus) from the judgment dismissing its application for a preliminary injunction. Louis Dreyfus Corp. v. Continental Grain Co., 348 So.2d 1286 (La.App. 4th Cir. 1977). Following our previous action Dreyfus in September filed a supplemental petition alleging specific amounts of damages it was seeking and the case was scheduled for trial on February 21, 1978.
On December 22, 1977, Continental’s Westwego grain elevator was destroyed by an explosion. As can be seen from our previous opinion the performance of the contract between the parties involved the operation of this facility so that its destruction has an effect on the obligations undertaken by the parties.
Continental filed an answer and recon-ventional demand in response to Dreyfus’ original petition in which it alleged that it was prevented from accepting tender of barges from Dreyfus in the Midwest because of freezing conditions and prayed for judgment declaring the contract suspended pursuant to the Force Majeure clause of the contract.
The amended reconventional demand sought to be filed by Continental contains in the tenth article the threshold allegation that its Westwego grain elevator was destroyed on December 22 and it is entitled to a judgment declaring the contract terminated as of that date, pursuant to the Force Majeure clause, so that it was no longer required to perform thereafter and would not be liable for any damages with respect to acceptance, storage or delivery of grain as a result of tenders by Dreyfus on or prior to December 22, 1977.
In the thirteenth article of Continental’s amended reconventional demand, it alleged that it had “purchased” from Dreyfus grain of which only a portion had been “sold” back to Dreyfus before the elevator was destroyed. Because Dreyfus insisted that their remaining 3.5 million bushels be handled in accordance with the contract requirements Continental sold it elsewhere and is thus entitled to judgment declaring that its action was proper and it has no liability to Dreyfus with respect to their 3.5 million bushels. The fourteenth article is directly related to this 3.5 million bushels in that Continental had paid interest on the amount it paid Dreyfus for the 3.5 million bushels at the rate stipulated in the contract, namely, 1% over the prime interest rate and when Dreyfus refused to accept this grain back from Continental it also refused to pay Continental the interest it had paid.
As to these three articles, namely, the tenth, thirteenth and fourteenth, they are directly related to the destruction of the Westwego elevator and its effect on Continental’s performance of its obligations. Furthermore, it is alleged that the explosion was another Force Majeure just as the freezing conditions were alleged to be in Continental’s original reconventional demand. An interpretation of this same article of the contract is involved in both instances.
LSA-C.C.P. Art. 1155 provides that the trial judge “may permit” the filing of a supplemental answer pleading defenses which have become exigible since the date *637 of filing the original answer and which are related to the original defense. Dreyfus is seeking injunctive relief and damages with respect to a contract scheduled to expire in September, 1978. Continental originally defended, based on an alleged Force Maj-eure occurring in January, 1977, and now defends on an additional one occurring in December. It would seem incongruous for the case to go to trial with Continental unable to allege the destruction of the elevator with the conceivable result that Continental would be ordered to perform with a facility that has been destroyed. We have concluded that the trial judge improperly refused to permit the filing of amending articles tenth, thirteenth and fourteenth.
The eleventh amending article contains allegations with respect to paragraph 8.2 of the contract concerning the charges by Continental to Dreyfus for elevation of the grain. It is alleged that Continental informed Dreyfus in February that it was raising this charge from five to seven cents per bushel, effective April 1, 1977, and Dreyfus objected. But they agreed to an interim charge of six cents without prejudice to either side. Continental, in this eleventh article claims entitlement to the additional one cent on the 22,810,239 bushels put through the elevator from April 1 to the date when the elevator was destroyed.
As to this eleventh article, we are not convinced that the trial judge abused his discretion in refusing the amendment. If the explosion had not occurred and the agreement run its course to September, 1978, it would have done so with the understanding that the dispute over the one cent per bushel would be worked out one way or another in court or otherwise. The fact that the amount is now fixed because of the elevator’s destruction does not require that this particular dispute be resolved at this time. The question here has nothing to do with the weather in January or the explosion in December. It concerns an interpretation of portions of the contract regulating the elevation charges to be made.
The fifteenth amending article alleged a dispute between the parties over commercial contracts, unrelated to the contract primarily in dispute. Here Continental claims $437,000 based on the difference between the price it would have paid Dreyfus for corn purchased pursuant to the throughput agreement and the price it had to pay for the corn from other sources in order to load two ships tendered by Dreyfus under the unrelated commercial contracts.
Here again, we are not convinced that the trial judge abused his discretion in disallowing the addition of this fifteenth amending article because it appears to involve issues unrelated to the throughput agreement. In its application for writs, Continental states that this claim came about because “Dreyfus is liable to Continental for damages occasioned by the increased cost of grain loaded aboard vessels nominated by Dreyfus during January and February, 1977, for the purpose of receiving grain which Dreyfus had previously tendered to Continental in ice-bound barges.” But the amending article itself begins with an allegation that “in May and June, 1976, Continental and Dreyfus entered into commercial contracts, unrelated to the throughput agreement . . Based on the wording of this amending article the trial judge may have felt that the trial of the case would become unnecessarily complicated by adding issues arising out of these “unrelated” commercial contracts.
As to both articles, eleventh and fifteenth, there is much to be said for the proposition that these disputes should all be resolved at one time in the interests of judicial economy. However, the trial judge undoubtedly considered this advantage but in the exercise of sound discretion refused to permit the addition of these somewhat unrelated matters to an already complex law suit.
Accordingly, the judgment of the trial court which made the rule absolute with respect to the twelfth article only of the amended reconventional demand and related sub-paragraph (v) of the prayer is amended so as to make the rule absolute additionally with respect to the tenth, thir *638 teenth and fourteenth articles and related sub-paragraphs (iii), (vi), and (vii) of the prayer.