595 So.2d 756 (1992)
BOLLINGER MACHINE SHOP AND SHIPYARD, INC.
v.
UNITED STATES MARINE, INC.
No. 91-CA-0989.
Court of Appeal of Louisiana, Fourth Circuit.
February 25, 1992.
On Rehearing March 18, 1992.
*757 Gregory F. Gambel, Mark W. Smith, Gambel, Calvert and Smith, New Orleans, for appellant.
David C. Treen, Charles K. Reasonover, Duris L. Holmes, Deutsch, Kerrigan & Stiles, New Orleans, and L. Clifton Dickerson, III, Lockport, for appellee.
Before SCHOTT, CIACCIO and PLOTKIN, JJ.
CIACCIO, Judge.
This is an appeal from a judgment of the trial court granting plaintiff's request for preliminary injunction. For the following reasons, we affirm in part and remand the case for further proceedings consistent with this opinion.
This lawsuit arose out of a contract dispute between Bollinger Machine Shop and Shipyard, Inc. (hereinafter "Bollinger") and United States Marine, Inc. (hereinafter "U.S. Marine"). In November of 1989, Bollinger contracted with the U.S. Navy to build eight fiberglass vessels known as landing craft personnel large or LCPLs. Pursuant to this agreement, Bollinger subcontracted with U.S. Marine to fabricate some of the tooling, known as plugs and molds, to be used in the construction of these boats. Bollinger had contracted with U.S. Marine on previous occasions for other projects which are not part of the present dispute.
The initial contract between Bollinger and U.S. Marine for the LCPL project consisted of a verbal agreement between Bollinger and U.S. Marine for the construction of plugs and molds for a fixed price of $88,307.00. This figure was based on the number of manhours necessary for U.S. Marine to complete the plugs and molds, which were to be used in the fabrication of the vessels. Pursuant to this agreement, U.S. Marine billed Bollinger for the contract price, and Bollinger remitted $78,307.00 as payment on the contract.
While the construction of the molds was in progress, Bollinger drafted a written contract for the actual construction of the vessels by U.S. Marine for a fixed price of $667,056.00, but this document was never signed by U.S. Marine.
In August of 1990, Bollinger became dissatisfied with the progress of the work performed by U.S. Marine and decided to terminate all contracts then in existence with U.S. Marine, including the LCPL project. Bollinger requested the return of all equipment and materials in the possession of U.S. Marine in conjunction with these projects. U.S. Marine eventually turned over all materials relating to other *758 projects, but refused to release the LCPL equipment, i.e. the plugs and molds which were under construction and necessary for the completion of the LCPLs.
On August 20, 1990, Bollinger filed a "Petition for Temporary Restraining Order and Injunctive Relief or Alternatively for a Writ of Sequestration" alleging irreparable injury because of U.S. Marine's failure to surrender the LCPL plugs and molds. On the same date, the trial court signed an order stating that U.S. Marine was "hereby temporarily restrained, enjoined, and prohibited from denying Bollinger Machine Shop and Shipyard, Inc. access to any equipment and materials relating to the project known as the LCPL project for any purpose, including transportation of such equipment and materials...."
Pursuant to this order, Bollinger took possession of the plugs and molds for the LCPL project by removing them from the U.S. Marine premises and transporting them to another site. Bollinger subsequently dismissed its petition for writ of sequestration as the equipment sought had been obtained. The restraining order provided that it would expire ten days from the date of issuance; however, the parties agreed to continue the effect of the restraining order until the hearing on the preliminary injunction had taken place.
This matter was then referred to the commissioner's office by the trial judge, and a hearing on the preliminary injunction was commenced on September 11, 1990. On September 20, the commissioner rendered a report recommending "that a preliminary injunction issue in the form and substance of the temporary restraining order." This recommendation was made the judgment of the trial court on January 28, 1991. This appeal followed.
Appellant, United States Marine, asserts that the temporary restraining order and the subsequent preliminary injunction were erroneously issued by the trial court. They argue that Bollinger failed to prove its ownership of the equipment sought or that irreparable injury would result without issuance of injunctive relief. Appellant also argues that the injunction issued was in mandatory form and required a full trial on the merits prior to issuance. Finally, appellant claims damages and attorney's fees for the wrongful issuance of the injunctive relief.
The Preliminary Injunction
The preliminary injunction in this case continued in form and substance the temporary restraining order which prohibited U.S. Marine from denying Bollinger access to the plugs and molds for the LCPL project. Article 3602 of the La. C.C.P. provides that a preliminary injunction shall not issue unless notice is given to the adverse party and an opportunity had for a hearing. Further, a preliminary injunction may issue merely on a prima facie showing by the plaintiff that he is entitled to the relief sought and that he would suffer irreparable injury if such relief is not granted, since it is designed only to preserve the status quo until a full trial on the merits can be had. The issuance of a permanent injunction, on the other hand, takes place only after a trial on the merits in which the burden of proof is a preponderance of the evidence rather than a prima facie showing. Werner Enterprises v. Westend Development Co., 477 So.2d 829 (La.App. 5th Cir.1985), citing New Orleans Federal Savings & Loan Association v. Harry Lee, 425 So.2d 947 (La.App. 5th Cir.1983).
Appellant argues that the injunctive relief issued by the trial court was in mandatory form, i.e., commands the doing of something, and therefore had the effect of a permanent injunction. Bollinger, on the other hand, contends that the order was not mandatory as it only prohibited U.S. Marine from denying Bollinger access to the equipment, and did not require appellant's return or delivery of the items sought.
Louisiana jurisprudence had generally held it improper for a trial court to grant a mandatory injunction upon a prima facie showing at the hearing of a preliminary injunction. Werner Enterprises v. Westend Development Co., supra. However, our courts have held that an injunction in mandatory form may be properly issued in summary proceedings where all *759 parties had an opportunity to present their case in an evidentiary hearing. Dore v. Jefferson Guar. Bank, 543 So.2d 560 (La. App. 4th Cir.1989); Kliebert Educ. Trust v. Watson Marine Services, 454 So.2d 855 (La.App. 5th Cir.), writ denied, 457 So.2d 682 (La.1984). Further, the standard of proof to show entitlement to relief sought at such an evidentiary hearing is by a preponderance of the evidence, rather than a prima facie showing. Maestri v. Destrehan Veterinary Hosp., 554 So.2d 805 (La. App. 5th Cir.1989); Gurvich v. New Orleans Private Patrol Service, Inc., 578 So.2d 195 (La.App. 4th Cir.1991).
Although the language of the injunctive relief granted in this case purports to merely restrain or enjoin U.S. Marine from doing something, the purpose actually accomplished by the order is the transfer of the property in the possession of U.S. Marine to Bollinger. In Louis Dreyfus Corp. v. Continental Grain Co., 348 So.2d 1286, 1288 (La.App. 4th Cir.1977), this court stated that an injunction which sought to enjoin defendant from refusing to sell or buy commodities to or from plaintiff was in mandatory form which could best be resolved at the trial of the merits. Likewise, in the present case, the trial court's prohibiting U.S. Marine from denying Bollinger access to the equipment has the effect of a mandatory injunction which may only be issued after a full evidentiary hearing where the standard of proof is by a preponderance of the evidence.
In the case before us, the matter of the ownership of and entitlement to the plugs and molds in controversy was fully heard at the hearing for the preliminary injunction. Although the record does not show a stipulation between the parties to allow the trial court to dispense with a hearing on the permanent injunction, we find that the defendant was not prejudiced by the procedural method employed.[1]
The plaintiff's pleading was sufficient and adequate to put defendant on notice that plaintiff had requested relief in the form of the return of equipment in U.S. Marine's possession. The hearing on the preliminary injunction was continued once by agreement of the parties and both sides had an opportunity to participate in discovery. The hearing lasted for two full days, during which witnesses, both lay and expert, were called and testified and other evidence introduced. The Commissioner permitted a full hearing of all the issues in controversy and it is clear from the record that U.S. Marine was given full opportunity to present evidence on the merits of the case. There have been no allegations nor showing, nor are we able to find, any disadvantage to defendant by the trial on the preliminary injunction.
We have thoroughly reviewed the record in this case and find that plaintiff proved, by a preponderance of the evidence, that it was entitled to the relief sought and would suffer irreparable injury if denied injunctive relief. The record showed that Bollinger contracted with U.S. Marine for the construction of the plugs and molds for a fixed price. At the time the contract was terminated U.S. Marine had completed approximately 60-65% of the work on the plugs and molds, and Bollinger had paid the total amount billed by U.S. Marine, $78,307.00 of the $88,307.00 contract price. There was further evidence that the parties had reached an understanding that U.S. Marine had been paid in full for all outstanding balances on any project, including the LCPL tooling.
The only claim to ownership of the plugs and molds asserted by U.S. Marine at the hearing was by virtue of their contract with Bollinger to use the tooling to fabricate the eight LCPLs. However, U.S. Marine admitted at the hearing that the written contract for the construction of the vessels which had been forwarded to them by Bollinger was never signed and accepted by any representative of U.S. Marine.
*760 Further, Bollinger introduced the testimony of Carl Onesty, who was qualified as an expert in Navy procurement of small crafts. Mr. Onesty testified that once the vessels were constructed, the ownership of the plugs and molds remained with the contractor, Bollinger in this case, and were not considered deliverables to the Navy. Mr. Onesty also testified that Bollinger's inability to obtain possession of the plugs and molds could delay Bollinger's deadline with the Navy, and that any delay might cause Bollinger to lose Navy contracts in the future. Bollinger's testimony was that approximately 90% of their business consisted of Navy contracts, and the loss of future contracts would cause them irreparable injury.
Under the circumstances, we conclude that Bollinger proved, by a preponderance of the evidence, its entitlement to injunctive relief ordering U.S. Marine to surrender possession of the molds and plugs. The evidence likewise preponderated in Bollinger's favor that irreparable injury would be likely without the issuance of the injunction.
For these reasons, we find that the trial court's issuance of the preliminary injunction preventing U.S. Marine from denying Bollinger access to the LCPL plugs and molds was proper.

The TRO
At the time the TRO was issued, the plugs and molds for the LCPL project were in the possession of U.S. Marine. The issuance of the TRO compelled U.S. Marine to relinquish possession and control to Bollinger. Although the TRO was artfully worded in language that suggests it was issued to maintain the status quo, i.e., U.S. Marine was restrained from denying Bollinger access to the molds, this semantic distinction does not disguise the actual effect of the TRO, which was to force U.S. Marine to surrender or transfer possession of the molds to Bollinger.
When in mandatory form, that is, when it commands the doing of something, a TRO or a preliminary injunction may not issue without a full evidentiary hearing. Kliebert, supra, Werner, supra. The Bollinger TRO altered the status quo, and compelled U.S. Marine to relinquish possession of the LCPL equipment to Bollinger. Accordingly, the TRO was in mandatory form and should have not been issued on an ex parte application. Such order should have only issued after a full evidentiary hearing, but this was not conducted until the hearing on the preliminary injunction. Accordingly, we find that the trial court wrongfully issued this mandatory restraining order on Bollinger's ex parte application.
La. C.C.P. art. 3608 permits an award of damages and attorney's fees for the wrongful issuance of a temporary restraining order. In the present case, appellant prayed for an award of damages and attorney's fees in their answer to Bollinger's petition for injunctive relief. We find that U.S. Marine is entitled to an award of damages, if any can be proved, for the wrongful issuance of the TRO and to reasonable attorney's fees incurred in contesting its wrongful issuance.
Accordingly, for the reasons assigned, the trial court's judgment insofar as it issued a preliminary injunction prohibiting U.S. Marine from denying Bollinger possession of the LCPL plugs and molds is affirmed. We remand this case to the trial court for a determination of the damages, if any, suffered by U.S. Marine, and attorney's fees incurred as a result of the wrongful issuance of the temporary restraining order. Each party shall bear its own costs of this appeal.
AFFIRMED IN PART; AND REMANDED.
SCHOTT, C.J., dissents in part, with reasons.
SCHOTT, Chief Judge, dissenting in part:
I respectfully submit that injunction proceedings were wrongfully invoked in this case and wrongfully applied by the trial court with the result that the preliminary injunction should be annulled and the case remanded to the trial court for a determination of damages.
*761 The purpose of a TRO and a preliminary injunction is to preserve the status quo during the litigation. The opposite result occurred in this case. Because of the TRO, U.S. Marine lost possession of the molds and plugs and Bollinger got possession of them. The status quo was not preserved but upset. For this reason alone the TRO was wrongfully issued.
The rule for the preliminary injunction was filed and tried for the sole purpose of determining whether Bollinger should have possession of the molds and plugs. This was a moot question since Bollinger already had possession of them as a result of the TRO.
The extent to which these proceedings were flawed as a result of the erroneous issuance of the TRO is clear from the report of the commissioner. He reasoned that the preliminary injunction should issue in order to preserve the status quo resulting from the TRO. The status quo to be preserved is the one which prevailed before Bollinger went to court, not the one resulting from the erroneous TRO. Consequently, the preliminary injunction was wrongfully issued.
I respectfully dissent from that portion of the opinion of the majority which affirms the preliminary injunction. I concur in the remand for a determination of damages.

ON APPLICATION FOR REHEARING
PER CURIAM.
United States Marine, Inc. has filed an application for rehearing contending that this Court erred in holding that the matter of ownership of the molds and plugs in controversy was fully heard and properly adjudicated at the hearing for the preliminary injunction.
We agree that the dispute over ownership of the property was not litigated during the hearing on the preliminary injunction. Language in our original opinion to the contrary was unintentional and is withdrawn.
The parties did fully litigate the issue of Bollinger's entitlement to possession of the movables pending a trial on the merits. Although the commissioner ruled in Bollinger's favor for the wrong reason, i.e., preserving the status quo, his recommended judgment was correct.
We reaffirm our holding that Bollinger proved by a preponderance of evidence in a full evidentiary hearing that it was entitled to injunctive relief and would suffer irreparable harm if the injunctive relief was denied.
For these reasons, the application for rehearing is granted for the sole purpose of clarifying our original opinion. In all other respects, our original opinion is unchanged.
NOTES
[1] Unlike the usual situation where the injunctive relief is accessory to the main demand, this suit dealt solely with Bollinger's right to possess the property. The contractual dispute between Bollinger and U.S. Marine, i.e., U.S. Marine's claims for breach of contract, are the subject of another suit filed by U.S. Marine now pending on the docket of the Civil District Court.