777 So.2d 578 (2000)
METRO RIVERBOAT ASSOCIATES, INC.
v.
BALLY'S LOUISIANA, INC.
Metro Riverboat Associates, Inc., etc.
v.
Bally's Louisiana, Inc., et al.
Nos. 99-CA-0827 and 99-CA-0828.
Court of Appeal of Louisiana, Fourth Circuit.
December 13, 2000.
Rehearing Denied January 31, 2001.
Thomas W. Tucker, Lisa C. West, and John J. Cummings, III, New Orleans, LA, Counsel for Plaintiff/Appellee.
*579 Daniel Lund, Nathan T. Gisclair, Jr., Stephen P. Schott, Montgomery, Barnett, Brown, Read, Hammond & Mintz, L.L.P., New Orleans, LA, Counsel for Defendant/Appellant.
(Court composed of Judge WILLIAM H. BYRNES, Judge JOAN BERNARD ARMSTRONG, Judge PATRICIA RIVET MURRAY, Judge JAMES F. McKAY, and Judge MICHAEL E. KIRBY).
ARMSTRONG, Judge.
Defendant, Bally's Louisiana, Inc. ("BLI"), appeals the trial court's grant of a preliminary injunction in favor of plaintiff, Metro Riverboat Associates, Inc. ("Metro"). The injunction was granted after a second evidentiary hearing was held in this matter. This second hearing was held pursuant to a ruling of this Court, which remanded the case for another hearing after finding that Metro had failed to satisfy its burden of proof for the issuance of a mandatory preliminary injunction at the first evidentiary hearing. The facts of this case and the trial court proceedings leading to the earlier remand by this Court were set forth in Metro Riverboat Associates, Inc. v. Bally's Louisiana, Inc., 97-1672 (La.App. 4 Cir. 1/14/98), 706 So.2d 553, as follows:
In June 1993, Belle of Orleans, L.L.C. (Belle Company) was formed by Metro Riverboat Associates, Inc. (Metro) and Bally's Louisiana, Inc. (Bally's), two Louisiana corporations, for the purpose of owning and operating a gambling riverboat in Orleans Parish. Two months later, a comprehensive Operating Agreement was executed by Metro and Bally's to govern their respective rights and obligations in the conduct of Belle Company's business affairs, including capital contributions, voting rights, distribution of income and allocation of losses, and the resolution of disputes. Although Metro had a majority ownership interest under this contract, the Operating Agreement essentially required the consent of both members for any significant business decisions.
In conjunction with the Operating Agreement, Belle Company and Bally's entered into an equally detailed Management Agreement to govern the operations of the casino itself. This contract was signed on behalf of Belle Company, as owner, by both Metro and Bally's on the same date as the Operating Agreement. A state gaming license subsequently was awarded to Belle Company, and "Bally's Casino Lakeshore Resort" began operations in July 1995 in accordance with the applicable agreements.
The instant litigation was triggered by the December 1996 merger of Bally Entertainment Corporation into Hilton Hotels Corporation. Under Metro's interpretation of the Operating Agreement, this transaction resulted in a "change of control," an event which was defined as permitting most decisions to be made by a simple majority rather than by unanimous consent. Additionally, because Hilton Hotels had an ownership interest in another Orleans Parish riverboat casino, Metro interpreted the merger to result in Bally's violation of the noncompetition provision of the Operating Agreement. The contract provided that, unless cured, this default would deprive Bally's of any voting rights and could lead to the dissolution of Belle Company.
Metro made these interpretations clear to Bally's at a members' meeting conducted by telephone in February 1997. Minutes prepared by Metro's sole shareholder, Norbert Simmons, reported that eight resolutions had been passed, despite Bally's negative votes. The resolutions authorized actions that previously had required unanimity. Following that meeting, Mr. Simmons, purporting to act on behalf of Belle Company, directed Bally's, in its capacity as manager of the casino, to make significant changes in routing revenues and certain expense payments in order to comply with those resolutions. In a *580 separate letter, Metro notified Bally's that it had thirty days to cure its breach of the Operating Agreement's noncompetition clause.
Asserting that the transaction with Hilton Hotels had no impact on their contracts, Bally's responded with its own notice of breach as well as a formal request for a meeting, which was the first step in the dispute resolution procedures outlined in the Operating Agreement. Both parties then agreed to a brief "stand still" period to attempt a negotiated settlement.
At the expiration of the "stand still" period Bally's made written demand on Metro for binding arbitration of all their differences, asserting that this was required by the Operating Agreement. However, that same day, Metro filed this suit asking that Bally's be prohibited from pressing any demand for arbitration and that it be ordered to implement the resolutions passed at the February meeting pending judicial interpretation of the contracts. After the parties presented testimony and evidence on Metro's motion for a preliminary injunction, the matter was taken under advisement.
On April 18, 1997, the trial court granted Metro's motion for a preliminary injunction and ordered Bally's to (1) specify signatories for a new Belle Company checking account under Metro's control; (2) transfer all casino revenues except that needed for daily operations and its management fees to the new Belle Company checking account; and (3) to disburse funds from the new checking account in accord with Metro's directives as controlling member of Belle Company. In addition, Bally's was prohibited from proceeding with its demand for arbitration and from taking any action on its assertion that Metro had breached the Operating Agreement. In separate reasons for judgment, the court explained that the issues in dispute were not within the scope of the arbitration clauses of either the Operating or Management Agreements, and that the December 1996 Bally-Hilton merger represented both a violation of the Operating Agreement's noncompetition provision and a change of control under the language of that contract. (Footnotes omitted.)
After considering BLI's appeal of the trial court's judgment of April 18, 1997, this Court vacated the portion of the trial court's judgment ordering BLI to take specific actions to implement Metro's February 1997 resolutions and remanded this matter to the trial court for a new evidentiary hearing. Although Metro offered some evidence on the issue of irreparable harm at the first hearing, this Court remanded this matter after finding that Metro did not offer sufficient evidence to support its interpretations of certain provisions of the Operating Agreement.
A second evidentiary hearing was held on October 12, 1998. Each side presented additional testimony and documentary evidence. After that hearing, the trial judge rendered judgment on November 24, 1998, issuing another preliminary injunction in favor of Metro with the exact same wording as the one issued on April 18, 1997, except that the April 18, 1997 judgment also included language regarding BLI's demand for arbitration.[1]
In his reasons for the November 24, 1998 judgment, the trial judge adopted all relevant portions of his reasons for judgment issued on April 18, 1997. The judge indicated that, in his opinion, a full evidentiary hearing had been conducted before the issuance of the April 18, 1997 preliminary injunction; however, he followed the dictate of this Court and conducted a second *581 evidentiary hearing. The judge stated that his opinion regarding Metro's motion for a preliminary injunction was the same after the second hearing as it was after the first hearing, i.e., that the December 1996 merger between Bally's Entertainment and Hilton represented a change of control under the Belle Operating Agreement as well as a violation of the noncompetition clause of that agreement.
In its brief, BLI states that it filed an exception of no right of action, which was denied by the trial court. BLI admits that it did not appeal or file a writ application from the judgment denying that exception. BLI asks this Court to notice Metro's alleged lack of a right of action on its own motion pursuant to La. C.C.P. art. 927. We decline to do so, as we find no error in the trial court's denial of that exception.
In this appeal, as in the appeal following the issuance of the April 18, 1997 injunction, BLI argues that the issuance of a mandatory preliminary injunction was improper because Metro did not establish by sufficient proof that it will suffer irreparable injury in the absence of a preliminary injunction.
Initially, we note that the trial court has "great discretion" as to whether to grant or deny a preliminary injunction. A to Z Paper Company, Inc., 98-1417 (La.App. 4 Cir. 9/9/98), 720 So.2d 703. Thus, our inquiry is whether the trial court abused its great discretion by granting the preliminary injunction in this case.
The party seeking a preliminary injunction has the burden of proving (1) that the injury, loss or damage it will suffer if the injunction is not issued may be irreparable; (2) that it is entitled to the injunctive relief sought; and (3) that it will be likely to prevail on the merits of the case. A to Z Paper, 720 So.2d at 708. Generally, irreparable injury means that the party seeking the preliminary injunction cannot be adequately compensated in money damages for its injury or suffers injuries which cannot be measured by pecuniary standards. HCNO Services, Inc. v. Secure Computing Systems, Inc., 96-1753 (La.App. 4 Cir. 4/23/97), 693 So.2d 835, writ denied, 97-1353 (La.9/5/97), 700 So.2d 513.
In this case, we see no abuse of discretion in the trial court's decision to grant a preliminary injunction. The trial court did not abuse its discretion in concluding that Metro has shown that it is entitled to the injunction sought and a likelihood of success on the merits. The evidence, including Bally's own legal documents, provides a reasonable basis for the trial court's conclusion that the merger of Bally's into Hilton resulted in both a change of control and a violation of the non-competition agreement. Also, the trial court was reasonable to conclude that there is the threat of irreparable injury. The question presented is whether an eventual money judgment (assuming Metro eventually prevails on the merits) would provide Metro a remedy fully as adequate as a preliminary injunction. While the ultimate stakes in the case may be monetary, the immediate dispute is as to the rights of corporate control, and no monetary value can readily be placed on such rights. Thus, preliminary injunction affords Metro a far fuller remedy than would a judgment for money damages and there is irreparable injury.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
MURRAY, J. dissents for the reasons assigned by Judge KIRBY.
KIRBY, J., Dissents with reasons.
KIRBY, J., dissenting with reasons.
I respectfully dissent from the majority's opinion affirming the trial court's granting of a preliminary injunction in favor of Metro Riverboat Associates, Inc.
In his appeal, Metro argues that the injunction sought is one that will enforce *582 BLI's obligation not to do certain things, i.e., BLI's obligation not to violate the Operating Agreement or the February 1997 resolutions adopted pursuant to that agreement. This argument accepts as true Metro's assertion that Bally's merger with Hilton Hotels resulted in a change of control under the Operating Agreement, which changed the voting requirements to a simple majority rather than a super majority (requiring unanimous consent.) Metro claims that under La. C.C. art. 1987, no showing of irreparable injury is required where a party seeks to enjoin the violation of a covenant not to do.
Another panel of this Court has already classified this matter as a request for a mandatory preliminary injunction and has stated that a showing of irreparable injury is required. See Metro Riverboat Associates, Inc. v. Bally's Louisiana, Inc., 97-1672 (La.App. 4 Cir. 1/14/98), 706 So.2d 553. I agree. In my opinion, Metro should not be allowed to characterize this suit differently now in order to avoid the requirement of a showing of irreparable injury.
A mandatory injunction is one that orders the "doing of something." Bollinger Machine Shop & Shipyard, Inc. v. U.S. Marine, Inc., 595 So.2d 756, 758 (La.App. 4 Cir.), writ denied, 600 So.2d 643 (La. 1992). In Denta-Max v. Maxicare Louisiana, Inc., 95-2128, pp. 3-4 (La.App. 4 Cir. 3/14/96), 671 So.2d 995, 996-997, this Court discussed the distinction between mandatory and prohibitory preliminary injunctions and the level of proof required for each as follows:
Generally, a party may prevail on a hearing for a preliminary injunction by showing three things: "(1) that the injury, loss or damage he will suffer if the injunction is not issued may be irreparable; (2) that he is entitled to the relief sought; and (3) that he is likely to prevail on the merits of the case." Burnham Broadcasting Co. v. Williams, 629 So.2d 1335, 1338 (La.App. 4th Cir.1993); writ denied, 513 U.S. 814, 115 S.Ct. 69, 130 L.Ed.2d 25 (1994). However, the level of proof required for proving those three elements is different depending on whether the preliminary injunction sought is a prohibitory injunction or a mandatory injunction.
Under the provisions of La.C.C.P. art. 3602, a preliminary injunction may not be issued unless "notice is given to the adverse party and an opportunity had for a hearing." Generally, under the relevant jurisprudence, a preliminary injunction which simply preserves the status quo until a full trial on the merits may be issued on a prima facie showing by the party seeking the injunction. Bollinger Machine Shop & Shipyard, Inc., 595 So.2d at 758; Werner Enterprises, Inc. v. Westend Development Company, 85-248 (La.App. 5 Cir. 10/10/85), 477 So.2d 829, 832. However, the jurisprudence has established that a mandatory preliminary injunction, such as the mandatory preliminary injunction in this case, has the same basic effect as a permanent injunction, and therefore may not be issued on merely a prima facie showing that the party seeking the injunction can prove the necessary elements. See Bollinger Machine Shop & Shipyard, Inc., 595 So.2d at 758; Werner Enterprises, 477 So.2d at 832. Instead, the party seeking a mandatory preliminary injunction must show by a preponderance of the evidence at an evidentiary hearing that he is entitled to the preliminary injunction. Bollinger Machine Shop & Shipyard, Inc., 595 So.2d at 759; Werner Enterprises, 477 So.2d at 832.
Irreparable injury means that the applicant cannot be adequately compensated in money damages for his injury or suffers injuries that cannot be measured by pecuniary standards. HCNO Services, Inc. v. Secure Computing Systems, Inc., 96-1693, p. 11 (La.App. 4 Cir. 4/23/97), 693 So.2d 835, 842, writ denied, 97-1353 (La. 9/5/97), 700 So.2d 513.
*583 After reviewing the evidence presented at the April 15, 1997 and October 12, 1998 evidentiary hearings, I conclude that Metro has not proven by a preponderance of the evidence that the damage it will suffer if the preliminary injunction is not issued may be irreparable. At the April 15, 1997 hearing, Metro's President and 100% shareholder, Mr. Norbert Simmons, was asked to state what harm the Belle of Orleans would suffer if Metro did not obtain injunctive relief. In response to that question, Simmons listed three items.
First, Simmons testified that the Belle of Orleans had been instructed to vacate its office space immediately because the Belle's manager, Bally's, had not paid the rent. Second, Simmons stated that the Louisiana legislature was considering many bills at the time that would affect gaming and riverboat casinos and representatives of the Belle needed to be involved in the process in order to convey their views on those bills that had the potential to be injurious to the Belle. Third, Simmons alleged that the Belle has the worst record in the State of Louisiana with regard to purchasing from minority vendors. He claimed that Bally's had been ignoring an approved list of vendors and the failure to address that problem in an immediate way held the potential of great harm to the casino. When asked what was the worst case scenario if BLI was not forced to comply with the February 1997 resolutions, Simmons answered, "Disaster. Revocation of license, loss of our market, and public embarrassment."
At the October 12, 1998 evidentiary hearing, Metro presented no evidence on the issue of irreparable injury. In fact, Simmons did not state, and was not even asked, what harm Metro will suffer if injunctive relief is not granted.
With regard to the evidence on the issue of irreparable harm presented at the first hearing, Simmons testified as to the harm that the Belle of Orleans would allegedly suffer. This matter involves a request for injunctive relief on behalf of Metro, not Belle of Orleans. Metro and Belle of Orleans are separate and distinct entities. Belle of Orleans is owned by both Metro and BLI.
However, even assuming arguendo that evidence of irreparable harm to Belle of Orleans could be used to support a request for injunctive relief by Metro against BLI, I find that the evidence presented at the first hearing was not sufficient to satisfy Metro's burden of proof that injunctive relief is currently necessary to prevent irreparable harm to it. The order to vacate office space due to non-payment of rent occurred at the time of the April 1997 hearing. There was no evidence at the October 12, 1998 hearing that the rental of this office space was still an issue. Similarly, the alleged need of Metro to lobby the 1997 Legislature regarding bills pertaining to casino matters is now a moot issue. Finally, with regard to the issue of purchasing from minority vendors, Simmons did not state at the 1998 hearing that this continued to be a problem. Furthermore, none of the evidence at either hearing showed how this problem could result in irreparable harm to Metro.
The majority states that "[w]hile the ultimate stakes may be monetary, the immediate dispute is as to the rights of corporate control, and no monetary value can readily be placed on such rights." I disagree with the majority's view that the damages alleged by Metro cannot be measured by pecuniary standards. Furthermore, my opinion is that Metro's arguments regarding rights of corporate control are matters to be determined after a trial on the merits of Metro's request for a permanent injunction.
Because of my opinion that Metro has failed to establish by a preponderance of the evidence that the damage it will suffer may be irreparable if a preliminary injunction is not issued, I would vacate the mandatory preliminary injunction issued on November 24, 1998 and remand this case *584 for trial on Metro's request for a permanent injunction.
MURRAY, J., dissents for the reasons assigned by Judge KIRBY.
NOTES
[1] In Metro Riverboat Associates, Inc. v. Bally's Louisiana, Inc., 97-1672 (La.App. 4 Cir. 1/14/98), 706 So.2d 553, this Court found that the lower court correctly rejected BLI's demand for arbitration and affirmed the portion of the judgment prohibiting BLI from proceeding with its demand for arbitration.