429 So.2d 447 (1983)
Oail A. PHILLIPS
v.
INSILCO SPORTS NETWORK, INC.
No. CA-0134.
Court of Appeal of Louisiana, Fourth Circuit.
February 3, 1983.
Rehearing Denied April 27, 1983.
*448 Tucker & Schonekas, Russell J. Schonekas, New Orleans, for plaintiff-appellant.
Walker & Bordelon, David E. Walker, New Orleans, for defendant-appellant.
Before GULOTTA, AUGUSTINE and BYRNES, JJ.
BYRNES, Judge.
This is an appeal from the denial of a preliminary injunction. Appellant, Insilco Sports Network, sought to enjoin the appellee, O.A. "Bum" Phillips, from performing on "The Bum Phillips Show", a pre-game radio show featuring the coach of the New Orleans Saints football team scheduled to be broadcast over WWL radio in New Orleans, claiming that Phillips had agreed to perform exclusively for them. The trial court denied their petition for a preliminary injunction, finding that there was no meeting of the minds between the parties as to the relationship between Phillips' obligation to Insilco and Insilco's retention of the rights to broadcast Saints' games. We affirm.
This action was commenced by Phillips in May 1982, as a suit for payment due under a contract allegedly entered into "on or about April 3, 1981", between Phillips and the Insilco Sports Network. Insilco answered, admitting the existence of the contract, and reconvening for specific performance of Phillips' alleged obligation under that contract to make certain personal appearances on behalf of Insilco. This answer and reconventional demand was later supplemented by a demand for an injunction forbidding Phillips from performing on any other station without Insilco's permission. This request was based on an alleged provision in the agreement which provided that Phillips would perform exclusively for the Insilco Sports Network for the entire three year duration of the alleged contract.
Phillips answered the reconventional demand, denying this obligation and alleging that the agreement between the parties provided that should the Insilco Sports Network lose the exclusive rights to broadcast the Saints games in the 1982 and 1983 season, Phillips' obligation to perform for Insilco would be void for those years. Before trial Insilco and Phillips settled the claim for past due payment, leaving Insilco's demands for specific performance and injunctive relief as the issues for trial.
After hearing the testimony of those witnesses called by Insilco in support of their claims the trial court denied the injunction, finding that there was no meeting of the minds between the parties on the crucial question of whether Phillips' agreement to perform exclusively for Insilco was conditioned on Insilco's retention of the exclusive rights to broadcast Saints games.
The facts as brought out at trial are as follows: In March, 1981 representatives of the Insilco Sports Network met with Jack Cherry, a representative of O.A. "Bum" Phillips, to negotiate the terms of a contract whereby Phillips would do a certain number of pre-game shows on WGSO, the local outlet of the Insilco Network. The results of that meeting were embodied in a letter, dated April 3, 1981 and sent by Al Smith, then senior vice-president and general *449 manager of WGSO, to Phillips. After setting out the proposed agreement the letter went on to state: "If the foregoing terms meet with your approval, please sign the original and return to me for my files." It was stipulated by the parties that neither the original or a copy of this letter, signed or unsigned, was ever returned to Al Smith or any other representative of Insilco.
On April 15, 1981 Jack Cherry allegedly mailed a letter to Al Smith. This letter made several revisions in the terms proposed by Smith in his letter of April 3rd. These revisions included provisions that the proposed show would be aired only on the day of the game, that Phillips would be paid monthly rather than bi-monthly, and as O.A. Phillips, Jr. Inc. rather than as an individual. Most importantly, this letter provided that, "should Insilco Broadcasting and/or WGNO fail to be the official flagship station for the New Orleans Saints Broadcast in the 1982 or 1983 seasons this agreement would be null and void those years."
Insilco maintains that this April 15 revision was produced by Cherry and Phillips in an attempt to avoid the obligations allegedly imposed by the April 3rd. letter. Phillips asserts that the letter was mailed shortly after it was written and that the unorganized and inadequate filing system at WGSO was responsible for the failure of representative of that station and/or Insilco to receive the letter.
The record in this case leaves no doubt that the parties intended to reduce their contract to writing. Both the April 3rd. letter and the testimony of every witness supports this conclusion. Thus, the trial judge was correct in ruling that there was no written contract between the parties. However, this does not mean that the parties did not have a contract, only that it was not in writing.
It is axiomatic that the burden of proof in a contract case is on the party claiming rights under that contract. North American Contracting Corp. v. Gibson, 327 So.2d 444 (La.App. 3rd Cir.1975), New Orleans Silversmiths Inc. v. Wormser, 258 So.2d 592 (La.App. 4th Cir.1972), Walters v. Edwards, 212 So.2d 749 (La.App. 1st Cir. 1968). Insilco, as the plaintiff in reconvention, had the burden of proving the essential elements of the contract under which they claimed their rights. In other words Insilco's burden was to establish that the exclusivity provisions of their contract with Phillips was unconditional.
Insilco argues that the contract was conclusively established by the pleadings. They are partially correct in this argument. The pleadings filed by the parties did establish certain elements of the contract. Those elements alleged by one party and admitted by the other were conclusively established under the principal of judicial confession, La.Civil Code Art. 2291. However, the crucial question of the relationship between Phillips' obligation to perform exclusively for Insilco and the retention by Insilco of exclusive rights to broadcast Saints games was disputed and thus not established the pleadings.
The trial court, after hearing the testimony of those witnesses called by Insilco, ruled that there was no meeting of the minds between the parties on this issue. While Insilco's witnesses all testified that they were not aware of the proposed tie in between Insilco's contract with the Saints and Phillips' contract with Insilco, the April 15, 1981 letter from Cherry to Smith, which was introduced into evidence by Insilco, clearly makes Phillips' obligation conditioned on the retention by Insilco of exclusive broadcast rights to Saints games. By introducing this April 15 letter into evidence Insilco itself raised doubts on this point which the other evidence and testimony they presented did not adequately resolve. The prima facie case, which they may have otherwise established by introduction of the April 3, 1981 letter and the testimony of witnesses, was undermined by the introduction of the April 15, letter which clearly contradicted both the terms of the April 3 letter and the testimony of the witnesses. Given these circumstances the trial judge was correct in denying the preliminary injunction. We therefore affirm.
AFFIRMED.

*450 ON DENIAL OF REHEARING
The applicant seems to misconstrue the rationale behind our ruling. We did not base our decision on the exclusivity provisions of the alleged contract but rather on the failure of Insilco to establish by a preponderance of the evidence that the term of their agreement with Phillips was not conditioned on their retention of exclusive rights to broadcast Saints games.
This element of the contract was not established by the pleadings. Phillips specifically denied that he was unconditionally bound to perform for Insilco for three years. Our decision correctly holds that Insilco failed to establish an unconditional right to require Bum Phillips to perform exclusively for that network during the 1982 and 1983 seasons.
For the foregoing reasons the rehearing is denied.