WILLIAMS, Judge.
This is an appeal by defendant Billy Barr from a decision of the trial court finding that he had breached a contract entered into with plaintiff Quaglino Tobacco and Candy Company, Inc. [“Quaglino”]. Plaintiff was awarded $3,630.70 in damages.
In February, 1984, Barr and Quaglino entered into a contract in which Barr gave Quaglino exclusive vending rights for five years for cigarette machines at a tavern on Chartres Street in New Orleans. In September, 1985, defendant requested removal of the machines. Apparently, defendant had entered into a contract with another vending company and wanted to place its machines in his bar. The following month, plaintiff filed suit for breach of contract. After a trial on the merits, the court found in favor of plaintiff, awarding $3,630.70 in damages plus interest and $750.00 in attorneys’ fees. It is from this judgment that defendant now appeals, asserting that the trial court committed three errors: (1) failing to find that the contract had been nullified the preceding year; (2) failing to find that plaintiff had breached the contract; and (3) awarding $3,630.70 in damages.
NULLIFICATION
Defendant argues that he lost his lease at the location of his tavern in December of 1984. He testified that he was sick and hospitalized. An agent of the owner testified that no rent was received for January through April, 1985, and that the property was closed up at that time. Defendant claims that another lessee, Barr Investments, Inc., entered into a lease on the property. Defendant’s son was president of the company. Later, defendant somehow acquired the stock in Barr Investments.
Defendant argues that once he lost control over the premises on Chartres Street, the contract was nullified, because it contained an “exclusive location” provision. Plaintiff contends that defendant never actually lost control over the premises; defendant controlled Barr Investments, and the trial court properly ignored the corporate entity in finding defendant personally liable.
The following relevant facts were adduced at trial: (1) no corporate minutes or documents of any kind have been generated by Barr Investments, including tax returns and bank accounts; (2) no corporate resolutions authorizing defendant to enter into contracts or leases on behalf of the corporation were ever passed, yet he consistently acted on the company’s behalf; and (3) in the absence of apparent “corporate authority,” defendant continued to run the business.
Defendant contends that the objective of the contract was to maintain a cigarette vending machine at that location and when he no longer had control over the space, the contract was nullified. Based on the facts as presented at trial, we cannot conclude that the trial court was manifestly erroneous in its holding, because there is support for the conclusion that defendant was in actual control of the premises.
*202 Although the general rule is that corporations are distinct from individuals, under certain circumstances, a court may disregard the corporate entity and hold a shareholder personally liable. La.R.S. 12:93(B); La.Civ.C. arts. 435 and 437; Hock v. Sea Camper of New Orleans, Inc., 419 So.2d 1315 (La.App. 4th Cir.1982), writ denied 423 So.2d 1182 (La.1982).
If a business is conducted in such a manner that the identity of the corporation cannot be distinguished from the shareholder’s then a corporation may be determined to be the shareholder's alter ego, and the shareholder will be personally liable. Keller v. Haas, 202 La. 486, 12 So.2d 238 (1943). The record in this case is replete with evidence of Barr Investment’s failure to keep a separate identity: there were no corporate formalities, no separate accountings, etc. See Kingsman Enterprises, Inc. v. Bakerfield Electric Co., 339 So.2d 1280 (La.App. 1st Cir.1976).
Defendant’s testimony that his son ran the business during his (defendant’s) illness and later “turned over” the shares to him is less than compelling. During his illness, it appears that the tavern was not open. Defendant, however, was never evicted from the premises. When he “took over” the company and began to operate the tavern once again, he acted as if his contract with plaintiff were still in effect, and at no time indicated that, in any way, it was nullified.
Based upon defendant’s actions and the evidence supporting plaintiff’s assertion that Barr Investments was no more than defendant’s alter ego, we find no error in holding that the contract was still in effect.
BREACH BY PLAINTIFF
Defendant argues that the trial court was in error in holding that plaintiff itself had not breached the contract. The basis for this argument is testimony by defendant that plaintiff consistently “shortchanged” him in filling up the machine and by failing to keep adequate records of their transactions. He also contends that plaintiff misapplied proceeds from sales from the machine at his tavern to the reduction of a promissory note made in connection with a machine at a different location.
Stanley Alexander, plaintiff’s general manager in charge of vending and Eddie Vargas, who, for most of the time in question, was plaintiff’s route supervisor attending to defendant’s machine, both testified at trial. They stated that although they had received some complaints from defendant, subsequent follow-up proved them to be groundless. Defendant was also characterized as something of a chronic complainer. Based upon the evidence, we find that there is no basis for reversal of the trial court’s evaluation of the witnesses’ credibility. Canter v. Koehring Co., 283 So.2d 716 (La.1973).
Furthermore, evidence adduced at trial concerning the application of funds to another note signed by defendant is vague. Based upon the testimony, we cannot conclude that the trial court was erroneous in determining that plaintiff had not breached its contract with defendant.
DAMAGES
Defendant contends that the trial court was in error in its assessment of damages and in not considering plaintiff’s failure to mitigate.
Plaintiff introduced into evidence a statement of sales for the previous nine months from the vending machine at the tavern. Because there are no reasons for judgment, we have tried to reconstruct the trial judge’s process for determining damages. It appears that he took the average of the gross profits for the previous 6 months that the bar was open (and excluded the 3 months it was closed) and multiplied by the remaining months of the contract life (40).
Furthermore, defendant argues that the plaintiff failed to mitigate its damages. At trial, Alexander testified:
Q: ... [H]e [Barr] asked you to remove your machine? ...
A: Yes. He told me, and we picked them up the following day.
[[Image here]]
Q: Where did you put these machines?
A: Back in our warehouse.
Q: How long did they stay in your warehouse?
A: That, I have no idea. I can’t answer that. I really can’t answer it.
*203 [[Image here]]
Q: Right. But, I mean, you don’t know whether you might have taken them out and put them back in the warehouse, and then place them—
A: Well, I’m sure that they have been relocated, if that answers your question.”
(Tr. at 45-46)
Defendant argues that plaintiff has mitigated its damages, and, therefore, should not be allowed to recover the full amount due under the contract. La.Civ.C. art. 2002. Nevertheless, defendant, whose burden it was to prove mitigation, failed to present any evidence of the amount of mitigation. Furthermore, it is possible that although the actual machine was relocated, plaintiff’s total inventory of machines could have been increased if it could not find another new location.
Although plaintiff was awarded damages based on, gross profits, defendant failed to object or to offer any evidence as to what net profits might be. There is no evidence in the record as to the overhead involved in stocking a single cigarette machine. Because of this, we cannot find that the trial court was in error in using the figures supplied to him in order to compute damages.
AFFIRMED.