526 So.2d 324 (1988)
ALLIANCE FINANCIAL SERVICES, INC.
v.
John J. CUMMINGS, III, et al.
Robert F. TALBOT, d/b/a Robert F. Talbot and Associates
v.
ALLIANCE FINANCIAL SERVICES, INC.
Nos. CA-9024, CA-9025.
Court of Appeal of Louisiana, Fourth Circuit.
May 12, 1988.
*325 Ryan & Willeford, James F. Willeford, John H. Ryan, Gordon P. Serou, Jr., New Orleans, for appellant and cross-appellee.
Stephen B. Murray, New Orleans, for appellees and cross-appellant.
Before GULOTTA, C.J., and KLEES and WILLIAMS, JJ.
GULOTTA, Chief Judge.
In this action to recover earnest money deposited under an agreement to purchase real estate, the plaintiff-purchaser appeals from a judgment dismissing its suit and permitting the defendant-sellers to retain the $100,000.00 deposit based on a finding that plaintiff failed to make a good faith attempt to satisfy a suspensive condition to the act of sale. In a consolidated case, the real estate broker involved in the transaction appeals from the trial court's denial of his claim for an $87,000.00 commission he would have received if the sale had been consummated. In answer to the purchaser's appeal, the defendant-sellers seek an increase in attorney's fees incurred on appeal. We affirm the judgment dismissing the purchaser and broker's claims, but award the sellers an additional $1,500.00 in attorney's fees for successfully defending against the purchaser's appeal.
BACKGROUND
On May 21, 1984, Alliance Financial Services, Inc. (Alliance) entered into an "Agreement to Purchase" the property at 700 S. Peters Street in New Orleans owned by John J. Cummings, III, Gregory F. Gambel, and Elizabeth M. Gambel. The agreement stated a purchase price of $4,300,000.00 cash and contained the following suspensive condition:
"The sale is conditioned on approvals from all necessary authorities on the addition of 2 floors to the existing building. The purchaser's [sic] have up to 90 days after acceptance to obtain these approvals."
The agreement further provided that the purchaser was obligated to deposit $100,000.00 with the seller immediately, and that if the purchaser failed to comply with the agreement within the time specified, "... the seller shall have the right to declare the deposit, ipso facto, forfeited, without formality beyond tender of title to purchaser, or the seller may demand specific performance."
Because Alliance wanted to alter the architecture of this building located in a historic area of New Orleans, it was required to obtain the approval of the modifications from the Central Business District Historic District Landmarks Commission (the Commission). Before the agreement to purchase was signed, the real estate agent, Robert F. Talbot, informed Alliance's president *326 that the Commission had previously approved a conceptual addition of two floors to the building proposed by Pio Lyons, an architect for another developer who had earlier contemplated purchasing the building. Talbot sent Alliance a copy of the Commission's February 15, 1984 letter approving Lyons's proposal, toured the building with Alliance's architect, Freddie Boothe, and gave him a design drawing by Lyons. According to Boothe, he used this drawing as a "starting point" for his own design.
Two or three days prior to the August 19, 1984 expiration of the 90 day period for obtaining approval from the authorities, Boothe presented to the Commission a three dimensional model of his proposed alterations to the building. The deputy director of the Commission's staff expressed doubt that it would be approved, however, and produced from staff files a design drawing by Lyons that the Commission had conceptually approved earlier in the year. According to Boothe, at this point he first learned of the prior approval and realized that he had built his model from a different Lyons sketch. Because he felt that it was highly unlikely that the Commission would approve his design in the next several days, and because insufficient time remained to redesign and resubmit his project, Boothe told Alliance that the Commission staff had rejected his design proposal.
On August 17, 1984, Alliance's attorney advised the sellers' attorney that Boothe had been unable to obtain the approval of the proper authorities for additional floors to the building, and demanded that its $100,000 deposit be returned. When the sellers refused to return the earnest money deposit, Alliance filed the instant suit. In a separate action, the real estate agent, Talbot, filed suit against Alliance for his broker's commission.
These consolidated matters were tried before a commissioner on stipulated exhibits and depositions. In written reasons, the commissioner concluded that in May, 1984, before the agreement to purchase was signed, Alliance had known that Pio Lyons had obtained approval from the Commission to add two floors on the building, and Alliance therefore, "... had more than enough time in which to file for and obtain approval from HDLC on final drawings for the addition." The commissioner further noted that Alliance had failed to show a good faith attempt to fulfill the suspensive condition since its architect Boothe had only informally contacted the Commission three days before the expiration of the time limit and never made a necessary formal application.
Concerning Talbot's claim for his real estate commission, the commissioner concluded that the agreement to purchase provided that the agent's commission was earned only at the consummation of the act of sale. According to the commissioner, since there was no act of sale in this case, Talbot's commission was not due.
In accordance with the commissioner's recommendations, the trial judge rendered judgment on December 12, 1986, dismissing Alliance's suit against the sellers, and further dismissing Talbot's suit against Alliance. In a separate judgment of May 20, 1987, the trial judge awarded $16,747.50 in attorney's fees to the sellers.
From the judgment dismissing their claims, both Talbot and Alliance have appealed. In answer to Alliance's appeal, the sellers seek additional attorney's fees.

ALLIANCE'S APPEAL
Although Alliance has raised five assignments of error, the thrust of its appeal is essentially threefold: 1) that the 90 day period to satisfy the suspensive condition to the act of sale began not from the May 21, 1984 signing of the agreement to purchase, but rather from the date merchantable title to the property was accepted on August 1, 1984; 2) that Alliance's architect acted in good faith in attempting to fulfill the suspensive condition in this time period; and 3) that the sellers failed to tender title to Alliance as a prerequisite to declaring the earnest money deposit forfeited.
At the outset, we note that even though the evidence consisted entirely of *327 depositions and stipulated documentary exhibits, the trial court's findings are still entitled to deference on appeal. In the absence of manifest error, this court is not permitted to substitute its own factual findings for those of the trial court. Virgil v. American Guar. & Liability Ins., 507 So. 2d 825 (La.1987).
Inception of the 90 Day Period
The agreement to purchase provides that Alliance has up to "90 days after acceptance" to obtain approval from the necessary authorities for the addition of two floors to the existing building. The agreement does not specify what is meant by "acceptance", but a reading of the contract indicates that it means the sellers' acceptance of the offer to purchase. Indeed, a later paragraph in the agreement provides as follows:
"Upon acceptance of this offer, seller and purchaser shall be bound by all its terms and conditions and purchaser becomes obligated to deposit with seller immediately $100,000.00 cash." (Emphasis ours).
Furthermore, the sellers' signatures to the agreement to purchase are located next to the word; "Accepted:". In view of these provisions, though the agreement also refers to the "acceptance" of merchantable title in a separate paragraph, the August 1, 1984 deadline for the sellers to correct any title defects is irrelevant to the 90 day period for satisfying the suspensive condition. This period began to run upon the signing of the agreement to purchase.
It is also significant that the agreement to purchase was drafted by Alliance. Thus, even if the word "acceptance" within the meaning of the suspensive condition is viewed as ambiguous, any doubt or ambiguity must be interpreted against Alliance. LSA-C.C. Art. 2056; Kenner Industries, Inc. v. Sewell Plastics, Inc., 451 So.2d 557 (La.1984); Aguillard's Enterprises Inc. v. Smith, 439 So.2d 1158 (La.App. 4th Cir. 1983), writ denied 444 So.2d 1224 (La.1984).
Accordingly, we conclude the trial judge properly found that the 90 day period for satisfying the suspensive condition of obtaining the Commission's approval to the additions to the building expired on August 19, 1984, ninety days after the agreement to purchase was signed.
Alliance's Good Faith
Alliance further argues that the trial judge erred in concluding that it had failed to show a good faith attempt to secure approval of its design modifications to the building. In this regard, Alliance points out that its architect Boothe was not required to submit a formal application to the Commission where it would have been a "futile gesture" after the Commission's deputy chief of staff told him that the Commission would not approve his design. Alliance further contends that satisfying the condition was not simply a matter of following Lyons's drawings (as indicated by the trial court) since it did not even know the approved drawing existed when it executed the agreement to purchase and would not have hired Boothe to duplicate another architect's work. We disagree.
Boothe stated in his deposition that he presented his model at the office of the Historic District Landmarks Commission only three days before the August 19, 1984 expiration of the 90 day period. Lary Hesdorffer, the Commission's deputy director, testified that written applications are reviewed by the staff, the architectual review committee, and the full commission, and that it would have taken a minimum of two weeks to get the Commission's approval of Boothe's project. Hesdorffer further stated that, even though Boothe's model did not reflect Lyons's previously approved concept, neither he nor anyone on the staff told Boothe that he would not be able to get approval for his proposal. It is undisputed that Boothe is an experienced architect who was aware of the Commission's procedures.
A party has an implied obligation to put forth a good faith effort to fulfill a suspensive condition. Dapremont v. Crossley, 367 So.2d 127 (La.App. 4th Cir. 1979), writ denied 369 So.2d 710 (La.1979). When a party's own fault causes the failure of the condition, he cannot assert such failure to avoid his obligations under the *328 contract. LSA-C.C. Art. 1772; Dapremont v. Crossley, supra.
In view of the undisputed evidence that Alliance had been aware since May, 1984 that the Commission had conceptually approved another architect's proposal for two additional floors to the building, Boothe and Alliance failed to exercise reasonable diligence to obtain timely approval of their own design within the specified time. An informal discussion with the Commission staff three days before the deadline is less than a reasonable attempt to satisfy the condition.
In so holding, we distinguish Weysham v. Harney, 518 So.2d 1059 (La.App. 4th Cir.1987), cited by Alliance. The Weysham decision involved a prospective buyer's good faith application for loan financing as required by an agreement to purchase real property. We concluded that the purchaser had not acted in bad faith where he had submitted a loan application to a homestead, had provided homestead officials with all information requested, and had not delayed, obstructed, or hindered the loan process, even though he had incorrectly listed his personal income. The prospective purchaser had not misrepresented or intentionally withheld financial information from the homestead to assure rejection of his loan application, which would have been denied no matter how he had presented his financial condition.
The situation in the instant case is far different from that in Weysham, however. Alliance's architect, who was familiar with the Commission's application procedures, tardily submitted to the Commission staff a model of his proposed design changes only three days before the deadline when it was impossible to submit a formal application that could have been approved by the Commission within the 90 day period. Unlike the innocent purchaser in Weysham, Alliance failed to cooperate fully in the application process and its own delay in approaching the Commission prevented the approval of the architectual changes within the time specified. Under these circumstances, the trial court properly found that Alliance had failed to make a good faith attempt to satisfy the suspensive condition.
Tender of Title
Alliance further argues that the defendant-sellers are precluded from retaining the $100,000.00 earnest money deposit since they failed to tender title as required by the agreement to purchase. In pertinent part, the agreement provides as follows:
"In the event that the purchaser fails to comply with this agreement within the time specified, the seller shall have the right to declare the deposit ipso-facto, forfeited, without formality beyond tender of title to purchaser, or the seller may demand specific performance."
Alliance contends that the trial judge erred in concluding that tender of title was a "vain and useless thing" under the circumstances.
In a letter of August 17, 1984, Alliance's attorney informed the sellers' attorney that the architect had been unable to obtain written acceptance by the proper authorities within the 90 day period. Alliance's attorney stated that the agreement to purchase was therefore "null and void" and he demanded the return of the $100,000.00 deposit.
A party is not required to tender a vain and useless performance where the other contracting party has announced that he will not honor the contract. Liuzza v. Panzer, 333 So.2d 689 (La.App. 4th Cir. 1976). Because Alliance stated in writing that it considered the agreement to purchase null and void, it was clear that it did not intend to purchase the property. Under these circumstances, the trial judge properly concluded the sellers were not required to tender title as a prerequisite to declaring the deposit forfeited.

REAL ESTATE AGENT'S APPEAL
The agreement to purchase contains the following clause concerning the real estate agent's commission:
"At the Act of Sale, seller agrees to pay the agent's commission of 6% of the first 100,000.00 and 4% of balance divided *329 equally between Robert F. Talbot & Associates and Alliance Realty Services which commission is earned at consumation of the Act of Sale."
Appealing from the judgment dismissing his claim, Talbot argues that Alliance, the party who breached the agreement to purchase, is responsible for paying his commission, which he earned by bringing the parties together on the price, the object, and the date of the sale.
As noted by the Commissioner, because the commission was earned only at the consummation of the sale, no commission is due in this case since no sale took place. The Commissioner also correctly observes that if the parties had intended that the breaching party must pay the agent's commission even without an act of sale, it would have been easy to have included such a provision similar to the clause stating that attorney's fees are payable by either party who fails to comply with the agreement. We find no error in the trial court's interpretation.
We likewise reject Talbot's argument that he is entitled to collect the commission as a blameless "third party beneficiary" of the contract. Under the terms of the contract, the commission is only due at the act of sale. Accordingly, Alliance is not responsible for Talbot's commission where no act of sale took place, even though Alliance itself breached the agreement to sell.

ATTORNEY'S FEES
In answer to Alliance's appeal, the defendant-sellers seek additional attorney's fees and costs incurred on this appeal.
In the May 20, 1987 judgment, the defendant-sellers were awarded $16,747.50 in attorney's fees pursuant to the agreement to purchase, which provided that the party who failed to comply with the terms of the agreement was obligated to pay "all reasonable attorney's fees and costs incurred by the other party in enforcing their respective rights."
Defendant-sellers are entitled to an increase in the award of attorney's fees incurred in this court. Blaise Parking and Enterprises Corp. v. Project Square 221, 409 So.2d 691 (La.App. 4th Cir.1982). Considering the defendant-sellers' briefs and exhibits in defending against Alliance's appeal, we award an additional $1,500.00 in attorney's fees.
Accordingly, the December 12, 1986 judgment dismissing Alliance's suit and further dismissing Talbot's suit is affirmed. The May 20, 1987 judgment awarding $16,747.50 in attorney's fees to defendants, John J. Cummings, III, Elizabeth Ann Meric Gambel, and Gregory F. Gambel, is increased to the sum of $18,247.50. In all other respects, the judgment is affirmed.
DECEMBER 12, 1986 JUDGMENT AFFIRMED; MAY 20, 1987 JUDGMENT AMENDED AND AFFIRMED.