629 So.2d 479 (1993)
LOUISIANA GAMING CORPORATION, Plaintiff-Appellant,
v.
JERRY'S PACKAGE STORE, INC., et al., Defendants-Appellees.
No. 93-320.
Court of Appeal of Louisiana, Third Circuit.
December 8, 1993.
Franklin H. Spruiell Jr., Shreveport, for Louisiana Gaming Corp.
Ronald D. Brandon, Many, for Jerry's Package Store, Inc., et al.
Before GUIDRY, KNOLL and SAUNDERS, JJ.
GUIDRY, Judge.
Plaintiff, Harold L. Rosbottom, Sr. d/b/a Automatic Amusement Company, appeals a judgment of the trial court denying his request for a preliminary injunction against defendant, Earl Lewing d/b/a Take Ten Club, in connection with a contract to place video poker machines in the Take Ten Club.[1] We reverse.

FACTS
On September 28, 1991, defendant, Earl Lewing d/b/a Take Ten Club, entered into a written contract with John Vaughn, an agent of plaintiff, Harold L. Rosbottom, Sr. d/b/a Automatic Amusement Company (AAC), to place video poker machines in the Take Ten Club (see Appendix). Because the Louisiana *480 State Police had not yet drafted the rules and regulations governing the operation of video poker machines in the state, the contract necessarily contained several conditional clauses, i.e., the State Police actually promulgating those rules and regulations; the legislature approving same; and, both AAC and the Take Ten Club becoming licensed and/or permitted under any and all rules and regulations promulgated in connection with the enabling legislation (see R.S. 33:4862.1 et seq.).
The contract stated the initial term of the agreement would be 36 months, beginning on the date AAC placed its first video poker machine in the contracting establishment. The agreement went on to clarify what was meant by "the date a machine was first placed" as either 90 days after the machines became legal or within 15 days of the establishment receiving its license/permit, whichever came later.
The Take Ten Club became a licensed establishment for video poker around July 6, 1992. Rosbottom testified that he received a list every Monday morning of establishments whose licenses had been acted upon the previous week and that upon seeing the Take Ten Club's license had been approved, he contacted Lewing that same week.
Lewing informed Rosbottom that he would not allow AAC to install any machines; he was no longer interested in doing business with AAC; he considered the contract breached by AAC when he did not get machines the first week in January 1992; and, he had obtained machines from another source. This suit followed wherein plaintiff seeks a preliminary injunction restraining and enjoining defendant from allowing any third person or entity from placing video poker devices in defendant's establishment.
At trial, Lewing maintained that John Vaughn, the AAC representative who executed the contract for AAC, assured him that the term of the contract was only for one year and that AAC would install the first video poker machines in the Take Ten Club shortly after the first of January 1992. Lewing also maintained that Vaughn said nothing about permit or licensing fees. Defendant testified that he did not read the two page contract, but rather relied upon the representations made by AAC's agent, Vaughn.
Finally, Lewing stated that he received a "packet" of materials from AAC in March or April of 1992 which contained information and the forms necessary to obtain his needed license. Lewing said he believed the packet information required him to pay the $1,000 device owner fee as well as the $100 licensed establishment fee, but he didn't contact AAC for clarification, instead he just threw everything away.
The trial court, without issuing either oral or written reasons, refused plaintiff's request for a preliminary injunction.

LAW
A preliminary injunction may issue on a prima facie showing by the plaintiff that he is entitled to the relief sought and that he will suffer irreparable injury if such relief is not granted. The purpose of a preliminary injunction is to preserve the status quo until a full trial on the merits. On the other hand, a permanent injunction can be issued only after a full trial on the merits in which the burden of proof is by a preponderance of the evidence. Bollinger Machine Shop and Shipyard, Inc. v. United States Marine, Inc., 595 So.2d 756 (La.App. 4th Cir.1992), writ denied, 600 So.2d 643 (La.1992).
The record clearly reflects that Lewing refused to honor the contract he signed with AAC. For this court to affirm the judgment of the trial court, the record must establish that plaintiff failed to make a prima facie showing of his entitlement to a preliminary injunction.
At trial and on appeal, Lewing argues that he was induced by fraud and the misrepresentations of plaintiff's agent, John Vaughn, to sign the contract. The record does not support defendant's allegations.
Lewing is 62 years old and according to his own testimony, has owned the Take Ten Club for six to seven years. The club has a class "A" liquor license, which requires that the appropriate forms be filled out and the necessary fees paid. These facts and the terms of the agreement signed by Lewing *481 belie his assertion that he had no idea licenses and fees would be required to operate video poker machines.
Lewing insists that he did not read the contract he signed, which we note is a very simply drafted document devoid of highly technical and complex legal terms, but rather relied upon the representations of AAC as to its contents. As a panel of this court explained in Barras and Breaux v. Champeaux, 526 So.2d 1231 (La.App. 3rd Cir. 1988):
Because defendant failed to closely consider the document or to receive legal advice is of no moment. A party may not avoid the provisions of a written contract he signed but failed to read or have explained to him. Tweedel v. Brasseaux, 433 So.2d 133 (La.1983); Brabham v. Harper, 485 So.2d 231 (La.App. 3rd Cir.1986).
In Tweedel, the Louisiana Supreme Court stated:
"[S]ignatures to obligations are not mere ornaments." Boullt v. Sarpy, 30 La. Ann. 494 at 495. Additionally, the courts of our state have long held that "[i]f a party can read, it behooves him to examine an instrument before signing it; and if he cannot read, it behooves him to have the instrument read to him and listen attentively whilst this is being done. Snell v. Union Sawmill Company, 159 La. 604 at 608, 105 So. 728 at 730 (1925). Bagneris v. Oddo, 2 Pelt. 278 (La.App.1919) held:
"The presumption is that parties are aware of the contents of writings to which they have affixed their signatures.... The burden of proof is upon them to establish with reasonable certainty that they have been deceived." 2 Pelt. at 285. Tweedel, 433 So.2d at 137.
Lewing testified that he can read and write, but in this case failed to read the contract, but rather relied on the representations of Vaughn. Rufus Joe Byrd, who manages the club for Lewing and who was called as a witness by his employer, on cross-examination, testified that he saw Lewing read and sign the contract. Byrd, on the other hand, also stated that Vaughn said the machines would be in by the first of the year and that the term of the contract "... had to be one year at least".
John Vaughn, who executed the contract for AAC, testified that he explained the contract to Lewing, including the special conditions on page two. Vaughn stated that he told Lewing there would be a $100 license fee payable up front by the establishment and that the machines could be installed as early as the first part of January 1992. While Vaughn may have been enthusiastic in his presentation and painted the rosiest picture possible to get Lewing to contract with AAC, we find no evidence of fraud.
In Adams v. Adams, 503 So.2d 1052 (La. App. 2d Cir.1987), our brethren of the Second Circuit explained thusly:
Article 1953 of the Louisiana Civil Code defines fraud as the misrepresentation or suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction. However, fraud does not vitiate consent when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill. This exception does not apply when a relation of confidence has reasonably induced a party to rely on the other's assertions or representations. LSA-C.C. Art. 1954.
In this case there is no indication of any misrepresentations and none which would have given AAC any advantage or caused any loss to Lewing. The contract required both parties to obtain necessary licenses and provided that both parties would be reimbursed the costs of those licenses out of revenues from the machines. The term of the contract clearly appears on its face and how the necessary fees would be paid is plainly explained under "Net Revenues" on page two.
Usually when a contract is breached, the party suing on the breach is awarded damages as his remedy. However, La.C.C. art. 1987 provides: "The obligor may be restrained from doing anything in violation of an obligation not to do". See New Orleans *482 Cigarette Service Corp. v. Sicarelli, 73 So.2d 339 (La.1954). The contract in this case placed an obligation on the defendant not to permit the placement of any other company's video poker machines in the establishment for the term of the contract (initially 36 months).
La.C.C.P. art. 3601 states in pertinent part: "An injunction shall issue in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law;...". Irreparable injury is not an essential condition for the grant of an injunction restraining the breach of an obligation not to do. New Orleans Cigarette Service Corp., supra.
For these reasons, the judgment of the trial court is reversed and it is now ordered that, conditioned upon plaintiff giving bond with good security in an amount to be set by the trial court after remand, a preliminary injunction issue herein enjoining Earl Lewing d/b/a Take Ten Club from allowing or permitting any person or entity to place video poker devices in the Take Ten Club, Highway 6 West, Many, Louisiana. This matter is remanded to the trial court for the purpose of the fixing of bond pursuant to La.C.C.P. art. 3610 and for further proceedings in accordance with law.
REVERSED AND REMANDED.
*483 
*484 
NOTES
[1] In the original petition, another plaintiff, Louisiana Gaming Corporation, sought a separate preliminary injunction against another defendant, Jerry's Package Store, Inc. That action was subsequently dismissed and has no bearing on the instant appeal. This appeal concerns only the preliminary injunction sought by Harold L. Rosbottom d/b/a Automatic Amusement Company against Earl Lewing d/b/a Take Ten Club.