666 So.2d 1268 (1996)
LOUISIANA GAMING CORPORATION, Plaintiff-Appellant,
v.
ROB'S MINI-MART, INC., Defendant-Appellee.
No. 27920-CA.
Court of Appeal of Louisiana, Second Circuit.
January 24, 1996.
Comegys, Lawrence, Jones, Odom & Spruiell by Frank H. Spruiell, Shreveport, for Plaintiff-Appellant.
Albert E. Loomis, III, Monroe, for Defendant-Appellee.
Before NORRIS, HIGHTOWER and BROWN, JJ.
NORRIS, Judge.
Louisiana Gaming Corporation (LGC) appeals the trial court's denial of its preliminary *1269 injunction against Rob's Mini-Mart, Inc. For the following reasons, we affirm.

Factual history
In 1990, Rob's Mini-Mart, Inc. (Rob's) leased the building located at 3201 DeSiard Street in Monroe from Central Oil and Supply to operate a convenience store. Rob Henderson is the president and sole shareholder of the corporation. A "bait room," where tackle and fishing equipment was stored and sold, occupied the back storeroom. On February 15, 1993, Rob Henderson on behalf of Rob's and Craig Herring, an agent of LGC, signed a written agreement allowing LGC "to place video draw poker device(s) at Establishment's location at 3201 DeSiard St. in Monroe." In consideration, LGC agreed to pay Rob's 50 percent of the net revenues generated by the machines. Performance was conditioned upon the following:
(a) Enactment of legislation authorizing and providing for operations and licensing of video draw poker devices in the State of Louisiana.
(b) Suitability of Establishment to procure and procurement of an Establishment license as provided for in the enabling legislation. Establishment and the individual who holds the license to sell alcoholic beverages for consumption on the premises hereby agree to provide such information and perform such acts as are required by the enabling legislation to procure a license to permit placement of video draw poker devices on the premises.
(c) Suitability of LGC to procure and procurement of all necessary licenses and permits to act as owner and/or operator of video draw poker devices.
(d) Compliance by the parties with the terms and requirements of all laws, regulations and rules associated with video draw poker devices.
Henderson testified that Herring also promised that LGC would help with the cost of any renovations needed for the convenience store to obtain a video poker license; however, this was not in writing. Henderson testified that he called LGC several times to ask about remodeling, licensing and obtaining the machines; Herring informed him that the law did not allow LGC to place the gaming devices in convenience stores. Billy Joe Allen testified that he began working as a sales manager for LGC in August 1993, and visited Rob's in November. According to Allen, Henderson told him that "they would not be doing video poker," but mentioned nothing regarding funding renovation costs. Allen testified he returned to the store four months later when he learned Henderson had applied for a video poker license; Henderson told him he did not want the machines because LGC failed to live up to its agreement. Allen testified he did not press for more details because it was questionable whether the convenience store could even legally have video poker machines.
After learning that video poker machines could not be placed in convenience stores, in early 1994, Henderson individually subleased the "bait room" from the corporation for $300 a month; he planned to convert this area into a lounge and obtain a license to operate video poker machines in the lounge. Henderson secured Central Oil's consent to the sublease by promising to pay it 50 percent of the profit from the video poker machines. Henderson signed an agreement with Four Rivers Gaming (FRG) to place video poker machines in the lounge. In addition, FRG agreed in writing to provide the first $5,000 to help cover construction costs. Henderson testified that he signed with FRG because it, unlike LGC, was willing to help him financially.
By letter dated July 6, 1994, Doyle Le-Croy, general operations manager for LGC, informed Henderson that the company knew of his pending application for a license, and wanted to install its machines as per the agreement when he received the license. Henderson phoned about two weeks later and told LeCroy he had signed with FRG. Henderson finished the renovations and in August opened the lounge, Rob's Hideaway, where FRG is presently operating its video poker machines.
On September 9, 1994, LGC filed the instant suit for a permanent injunction prohibiting Rob's from placing another's machines *1270 on his premises, specific performance of its contract and damages. It also sought a preliminary injunction; this hearing was held on October 12, 1994. In February 1995, the trial court issued a judgment with written reasons denying the preliminary injunction because: (1) Rob's did not breach the agreement as the suspensive condition, procuring a license for the convenience store, became impossible and the agreement null; and (2) its consent was vitiated by error. LGC has appealed, urging that the court erred in denying its preliminary injunction, in considering the affirmative defense of error and in allowing parol testimony to vary the terms of the written agreement.

Discussion
A preliminary injunction is an interlocutory procedural device designed to preserve the existing status quo pending a full trial on the merits. Breaud v. Amato, 94-1054 (La.App. 5th Cir. 5/30/95), 657 So.2d 1337. To obtain a preliminary injunction, the moving party must show it is entitled to the relief sought, without which irreparable injury, loss or damage will result. La.C.C.P. art. 3601; Breaud, supra; Louisiana Gaming Corp. v. Jerry's Package Store, Inc., 629 So.2d 479 (La.App. 3d Cir.1993). Irreparable injury is not a requisite item of proof, however, in cases involving an obligation not to do. La.C.C. art. 1987; New Orleans Cigarette Service Corp. v. Sicarelli, 73 So.2d 339 (La. App.Orl.1954); Louisiana Gaming Corp. v. Jerry's Package Store, supra. The party claiming rights under the contract bears the burden of proof. North American Contracting Corp. v. Gibson, 327 So.2d 444 (La.App. 3d Cir.1975), writ denied 332 So.2d 280 (La.1976). As opposed to the proof by a preponderance required for a permanent injunction in an ordinary proceeding, a preliminary injunction may issue upon a prima facie showing that the plaintiff would prevail on the merits. Foret v. Terrebone, Ltd., 93-676 (La.App. 5th Cir. 1/25/94), 631 So.2d 103; New Orleans Federal Sav. & Loan Ass'n v. Lee, 425 So.2d 947 (La.App. 5th Cir.1983); Breaud, supra. Under La.C.C.P. art. 3609, the trial court may conduct an evidentiary hearing in which it takes proof as in ordinary proceedings. See Phillips v. Insilco Sports Network, Inc., 429 So.2d 447 (La.App. 4th Cir.), writ denied 437 So.2d 1131 (La.1983). The trial court has great discretion in deciding whether to grant or deny a preliminary injunction, and its ruling will not be disturbed absent manifest error. Foret; Breaud, supra.
LGC contends that the trial court was clearly wrong to find that it failed to make the necessary showing that it would prevail on the merits, and thus erred in denying its request for a preliminary injunction.
Analyzing the contract, the trial court found that obtaining a video poker license for the convenience store was a suspensive condition to the performance of the contract. La.C.C. art. 1767. However, as a convenience store, Rob's Mini-Mart could not have obtained the license. A "licensed establishment," according to the enabling legislation, shall not include any convenience store, quick-stop or food-mart. La.R.S. 33:4862.1(8).[1] The trial court was entitled to find the apparent impossibility of fulfilling the suspensive condition a sufficient obstacle to LGC's showing. La.C.C. art. 1769.
Nonetheless, LGC contends that the location specified in the contract (3201 DeSiard Street) was, in fact, granted a license for video poker, thus satisfying the suspensive condition, and that Rob's breached its affirmative contractual obligation to "provide such information and perform such acts as are required by the enabling legislation to procure a license to permit placement of video poker devices on the premises." It claims that Rob's intentionally avoided this duty by subleasing the bait shop space to Henderson, who then obtained a video poker license for Rob's Hideaway instead.
Since the preliminary injunction is interlocutory in nature we will not belabor the merits of the contractual claim. On the evidence thus far presented, it appears that when the parties signed the contract, "the Establishment's location at 3201 DeSiard St." housed only a convenience store. On this record the trial court could find that the *1271 parties intended only to install video poker machines in the convenience store, an arrangement not legally prohibited at the time. Henderson's testimony would support this finding; Herring, who may have contradicted it, was not called to testify. The trial court may have felt his testimony would not have helped LGC. See Hawthorne v. Kinder Corp., 513 So.2d 509 (La.App. 2d Cir.1987). Further, even if the contract can be said to be ambiguous, it must be construed against LGC, which drafted it. La.C.C. art. 2056; Alliance Financial Services, Inc. v. Cummings, 526 So.2d 324 (La.App. 4th Cir.1988). In short, on the strength of the contract and the testimony presented, the trial court was not plainly wrong to find that LGC did not make an adequate showing that it would prevail on its contract claim.
LGC also urges in brief that Rob's had an affirmative duty to "do such acts as were necessary and available to become licensed for video poker at 3201 DeSiard Street." The contract specifically required only that the establishment (a convenience store) perform such acts as required by the enabling legislation to procure a license to permit placement of the video poker machines on the premises. Neither the specific enabling legislation referred to in the contract, nor the contract itself, required Rob's to create and construct an additional business in order to obtain a video poker license when it could not procure a license as a convenience store. At most, Rob's was obliged to put forth a good faith effort to fulfill the suspensive condition. La.C.C. arts. 1759, 1983; Alliance Financial Services, Inc. v. Cummings, 526 So.2d at 327. Henderson testified he phoned LGC about the games numerous times after entering the agreement, but was repeatedly told that video poker machines could not be placed in the convenience store. Effective July 1, 1994, the legislature expressly disqualified convenience stores and mini-marts from video poker licenses. This made it certain the suspensive condition would not occur. La.C.C. art. 1773; Jarrell v. Carter, 632 So.2d 321 (La.App. 1st Cir.1993), writ denied 94-0700 (4/29/94), 637 So.2d 467. The record supports a finding that Henderson made a good faith effort to honor the contract and that he had reason to believe the contract with LGC had terminated, further undermining LGC's attempt to show it would prevail on the merits.
In sum, we conclude the trial court was not clearly wrong to find on this record that LGC failed to make the requisite showing that it would prevail on the merits of the case. As correctly noted by the trial court, on this record, it appears that the impossibility of the suspensive condition rendered Rob's obligation unenforceable. La.C.C. art. 1769. The record also supports the conclusion that granting the instant preliminary injunction would not preserve the status quo, as FRG's machines were already in service on the premises. See Bollinger Machine Shop v. U.S. Marine, Inc., 595 So.2d 756 (La.App. 4th Cir.), writ denied 600 So.2d 643 (La. 1992). The trial court thus properly denied LGC's request for a preliminary injunction. Having so concluded, we do not reach the issue of the affirmative defense of error. Finally, we note that our touching upon or tentatively deciding merit-issues does not affect LGC's right to obtain a ruling on the merits after a full trial by ordinary proceeding. Hays v. City of Baton Rouge, 421 So.2d 347 (La.App. 1st Cir.), writ denied 423 So.2d 1166 (La.1982).
For the reasons expressed, the judgment of the trial court is affirmed. Costs of this appeal are assessed to the appellant, Louisiana Gaming Corporation.
AFFIRMED.
HIGHTOWER, J., concurs with written reasons.
HIGHTOWER, Judge, concurring.
I respectfully concur in the present result, which leaves several aspects of the case for resolution at a full trial on the merits, potentially after further amendments to the pleadings.
Concerning one of those aspects, I am uncomfortable with the fact that appellee subleased part of the building to its president and sole shareholder, under the circumstances shown here. Appellant strongly maintains that transaction to be a sham designed *1272 to circumvent Rob's video poker agreement.
A simulated lease, of course, may be disregarded. Teche Concrete, Inc. v. Moity, 168 So.2d 347 (La.App. 3d Cir.1964), writ denied, 247 La. 251, 170 So.2d 509 (1965). Cf. also Quaglino Tobacco and Candy Company, Inc. v. Barr, 519 So.2d 200 (La.App. 4th Cir.1987) (finding a corporation that assumed a lease to be the alter ego of the prior leasee, the tavern owner). Presumably, these matters (and others) will be more fully and more forcefully explored at a full trial.
NOTES
[1] Amended by Acts 1994, No. 13 § 1 (3rd Ex. Sess.), effective July 1, 1994.