722 So.2d 329 (1998)
Joe PAGE, Plaintiff-Appellant,
v.
GRAMBLING STATE UNIVERSITY, Defendant-Appellee.
No. 31,240-CA.
Court of Appeal of Louisiana, Second Circuit.
December 9, 1998.
Paul Henry Kidd, Monroe, Counsel for Appellant.
Winston G. Decuir, Baton Rouge, Counsel for Appellee.
Before BROWN, STEWART and CARAWAY, JJ.
*330 BROWN, J.
Plaintiff, Joe Page, was hired by Grambling State University in 1981. In March 1996, Page, who was 60 years old with 15 years of service, was eligible to retire under the Teachers Retirement System of Louisiana. Pursuant to La. R.S. 11:786, Page applied for and was accepted into the Deferred Retirement Option Plan ("DROP") for a period of three years ending March 31,1999; however, in March 1997, after only one year in DROP, Page's employment as an Assistant Director for Student Financial Aid was abruptly terminated by Grambling. No reason was given for Page's termination.
On June 6, 1997, Page filed the instant suit against Grambling seeking damages for breach of contract and in tort, as well as injunctive relief requiring Grambling to reinstate him in his position. A rule to show cause was ordered to determine whether a preliminary injunction should be granted reinstating Page during the pendency of the case. That hearing took place on August 25, 1997. On the day of the hearing, defendant filed an answer and exceptions of no right of action, no cause of action and prescription. The trial court denied injunctive relief and defendant's exception of no cause of action.[1] Page appeals the denial of the preliminary injunction. Defendant neither answered the appeal nor filed a brief in this court.

DISCUSSION
Page testified that he understood when he was hired in 1981 that he was an unclassified employee which meant that he could be terminated at will. In March 1996, Page was eligible to retire.[2] La. R.S. 11:786 allowed Page "in lieu of terminating employment and accepting a retirement allowance" to participate in DROP for a specified period not to exceed three years. In his application, Page specified the maximum three year period. La. R.S. 11:786 B further states:
Once specified, the period of participation may not be extended. A member participating in the plan may not terminate participation prior to the end of the selected duration without terminating employment. A member who chooses to participate in the plan shall elect a retirement plan option at the beginning of the participation period and such election shall be irrevocable once the participation period begins. (Emphasis added).
The statute refers only to a member prematurely ending participation by voluntarily terminating employment.
In March 1996, Page contacted Gwendolyn Joyce Vincent, the Assistant Director of Human Resources at Grambling. Ms. Vincent required Page to fill out an application for DROP. That document states "I (Page) understand that my decision to participate is IRREVOCABLE" and further, "I (Page) understand that the ending date that I have specified (March 31, 1999) may never be extended and may be shortened only by termination of employment." This statement tracks the language of La. R.S. 11:786 B.
Page's application was processed and accepted with a stated three year participation period. Neither Ms. Vincent nor the booklet explaining the plan provided any information suggesting that Page's employment could be terminated at any time without cause. Ms. Vincent also testified that no DROP participant from Grambling, except Page, had ever been prematurely and involuntarily terminated.
An eligible employee who enrolls in DROP is thereafter considered by the system to be in a retired status for the period he participates in the program. Although the employee keeps working, he does not continue contributing to the retirement plan. Further, payments are credited monthly into a DROP account for the employee in the amount of the retirement benefit the employee would have received if he had in fact retired. The employee, however, receives no further service credit for the three years of DROP participation in calculating eventual monthly retirement benefits. See Bailey v. Bailey, *331 97-1178 (La.02/06/98), 708 So.2d 354, discussing Louisiana State Employees Retirement System (LASERS).
For the teachers retirement system, Page is retired and the DROP account is credited with the amount of retirement benefits he would have been due. As far as Grambling is concerned, Page continues to work and receives a salary for work performed. As far as Page is concerned, he receives a salary for his work and is given credit in the DROP account (which is not available until sometime in the future). During the DROP period, however, Page loses the right to accrue additional credits toward the calculation of his base retirement benefits after the DROP period ends. See Bailey, supra.
Page's retirement benefits were based on a percentage of his salary. That percentage was determined by multiplying the number of years' service by 2%. With 15 years of service at 2%, Page would receive retirement benefits of 30% of his average highest three years' salary. With 18 years of service, Page would receive 36%. By contracting to be in DROP, Page gave up the right to count the DROP years in calculating his benefits. In return for this forfeiture, Page would have an accumulated amount at the end of the DROP period. The university benefitted in that DROP encourages senior employees to leave, making room for the promotion of younger employees. Everyone lost and gained something of value.
Absent a contract or statute stating otherwise, employment in Louisiana has traditionally been presumed to be at will and subject to termination at any time for any reason. La. C.C. art. 2747; Brannan v. Wyeth Laboratories, Inc., 526 So.2d 1101 (La.1988); Pitcher v. United Oil and Gas Syndicate, Inc., 174 La. 66, 139 So. 760 (La.1932). Page was an unclassified employee and subject to termination without cause; however, in 1996, he effectively retired and contracted to participate in DROP. Under this agreement a "quid pro quo" occurred in which Page and Grambling gave up something of value for other consideration.
The presumption of at will employment can be overcome. An at will relationship can be contractually altered. Whether the conduct of the parties in this case infers a new contract for a three year term of employment or a waiver of the at will status remains to be determined, as does the question of equitable estoppel.
There is also a public policy exception to the at will rule. An employee can not be discharged in violation of statutory or constitutional provisions. Termination based on age or sex discrimination would be such a violation. See 29 U.S.C. § 623; 42 U.S.C. § 2000e. There was testimony indicating that Page was replaced by a younger female; however, Page's petition has not specifically stated such a claim.
The right to a preliminary injunction is governed by La. C.C.P. art. 3601 which states that a showing of irreparable injury, loss or damage to the applicant is a prerequisite for a preliminary injunction. Page complains that the trial court did not apply the proper legal standard in denying him injunctive relief. Page notes that the trial court used the words "irreproachable harm" rather than the correct term of irreparable harm in discussing the issuance of a preliminary injunction. However, Page does not point out that the transcript also indicates that his own attorney used the term "irreproachable injury."
Even if both the court and Page's counsel inadvertently used the wrong word, there can be no doubt that the trial court clearly understood the proper legal standard. In its oral reasons for denying the preliminary injunction, the trial court stated that the standard is not met when a person can be compensated monetarily and for that very reason the trial court concluded that "there must be judgment against Page insofar as the preliminary injunction is concerned."
Page also asserts that it is not necessary that he show irreparable injury when the act complained of is unlawful. The essence of Page's complaint is an alleged breach of contract or an alleged detrimental reliance on an implicit promise, not a violation of law. He can not rely on a mere assertion of an unlawful act in order to avoid *332 making a prima facie showing of irreparable harm.
Additionally, Page asserts that the university's obligation in the instant case was one "not to do." Based on this assertion, Page relies on the principle that irreparable injury is not a requisite item of proof to obtain a preliminary injunction in cases involving an obligation not to do. In support, Page cites our opinion in Louisiana Gaming Corporation v. Rob's Mini-Mart, Inc., 27,920 (La.App.2d Cir.01/24/96), 666 So.2d 1268.
We find no prima facie evidence of an obligation "not to do." Instead, the allegations of Page's petition and Page's evidence in support thereof cannot be construed as an obligation "not to do." They essentially allege a three-year contract of employment with the university during Page's DROP participation. If such a contract could be construed as one "not to do," then virtually any obligation stated in the negative could be an obligation "not to do."
Rather than a contract "not to do," the obligation asserted by Page is more like that involved in Musser v. Mercy Academy, 389 So.2d 76 (La.App. 4th Cir.1980). In that case, a teacher and her husband filed suit for a TRO, a preliminary injunction, and a permanent injunction against Mercy Academy, its principal, and the religious Sisters of Mercy to prevent them from hiring a teacher to fill the position held by the plaintiff's wife who had signed a contract of employment with the academy for the 1979 school year. Although Mrs. Musser was originally scheduled to teach four classes, the principal subsequently informed Mrs. Musser that she would be expected to teach five classes due to the resignation of one of the other teachers. Mrs. Musser refused the five-class assignment, and the academy sought a replacement, prompting the lawsuit.
In Musser, the question presented was whether the plaintiffs would suffer irreparable injury in the absence of injunctive relief, and the court concluded that they would not. Instead, the court stated that in the event the defendants breached their contract, the plaintiffs had an adequate remedy to recover loss of salary and any other damages without injunctive relief; the damages could be compensated in money and could be measured by a pecuniary standard. Similarly, in the instant case, any damages suffered by Page as a result of the alleged actions of the defendant can be compensated in money; thus, the trial court correctly ruled that Page was not entitled to preliminary injunctive relief.
Page finally argues that the trial court erred in denying injunctive relief on the basis of insufficient evidence of a contract for a specified period of time. A breach of such a contract, however, is reparable monetarily and would not entitle Page to a preliminary injunction. Whether the circumstances infer a contract for a specified time of employment or whether Page's at will status was modified or waived are matters yet to be determined.

CONCLUSION
For the foregoing reasons the judgment of the trial court is AFFIRMED. We REMAND for further proceedings on the merits. Costs are assessed to appellant, Joe Page.
AFFIRMED and REMANDED.
STEWART, J., concurs in result.
NOTES
[1] No ruling was made on the other exceptions.
[2] At age 60 with 10 or more years of service, an employee was eligible for retirement. Page was 60 years old with 15 years of continuous employment.