769 So.2d 168 (2000)
Jimmy McJAMERSON, et al., Plaintiffs-Appellants,
v.
GRAMBLING STATE UNIVERSITY Through LOUISIANA BOARD OF TRUSTEES FOR COLLEGES AND UNIVERSITIES, Defendant-Appellee.
No. 33,975-CA.
Court of Appeal of Louisiana, Second Circuit.
September 27, 2000.
*169 Bobby L. Culpepper, Jonesboro, Counsel for Appellants.
Decuir and Clark by Winston G. DeCuir, East Baton Rouge, Counsel for Appellee.
Before STEWART, CARAWAY and DREW, JJ.
STEWART, J.
The plaintiff, Jimmy McJamerson, appeals the trial court's denial of his claim against the defendant, Grambling State University ("Grambling"), for damages stemming from an alleged breach of contract pertaining to Mr. McJamerson's employment. The trial court denied recovery, and we affirm the trial court's judgment for the reasons set forth herein.

FACTS
Mr. McJamerson filed suit against Grambling on December 17, 1998, alleging breach of an employment agreement between himself and Dr. Raymond A. Hicks, Grambling's president at the time. Mr. McJamerson testified at trial that he was approached by Dr. Hicks during the summer of 1997 about developing a new scholars' program for the university. Mr. McJamerson was then serving in the dual administrative and faculty positions of assistant director of planning and analysis and assistant professor of history respectively. The position of assistant director of planning and analysis was an unclassified "at will" position. The position of assistant professor was a tenured contract position, and Mr. McJamerson was a tenured faculty member of the university. Dr. Hicks' proposal required Mr. McJamerson to resign his administrative position, resume the position of a full time faculty member, and draft a proposal for the new program which Dr. Hicks would present to the Louisiana Board of Trustees for Colleges and Universities, (hereinafter "Board of Trustees"), for approval. In his dual position of assistant director of planning and analysis and assistant professor, Mr. McJamerson was a 12-month employee with yearly salary of $46,026. As a full-time assistant professor, Mr. McJamerson would be a 9-month employee with a yearly salary of $34,519. The monthly salary for both positions was the same, namely $3,835.46. If the Board of Trustees approved the proposal for the new scholars' program, then Mr. McJamerson would become director of the program, an unclassified, administrative "at will" position, at a salary of $16,000 in addition to his $34,519 salary as a full-time professor, making his total annual salary $50,519. If the proposal was not approved, then Mr. McJamerson would return to his former administrative position of assistant director of planning and analysis at his former salary of $46,026.
Mr. McJamerson agreed to Dr. Hicks' proposal. A "Personnel Action Form" which indicated the transfer of Mr. McJamerson from the 12-month position of acting assistant director of planning and analysis and assistant professor to the 9-month position of assistant professor was signed by Mr. McJamerson and the head of the department of history and geography on September 11, 1997. On September 30, 1997, Mr. McJamerson submitted a written proposal for the new program to Dr. Hicks. As of October 13, 1997, Dr. Hicks was no longer serving as president of Grambling. When Dr. Steve Favors was appointed new president of Grambling and began his duties in July 1998, Mr. McJamerson met with him about his agreement with the former president, Dr. Hicks. Dr. Favors refused to follow up with the new program proposed by Mr. McJamerson and decided to maintain the *170 status quo with Mr. McJamerson continuing to serve as a full-time assistant professor of history. According to Dr. Favors, an honors program already existed at Grambling, and there was no reason to change the existing program. Additionally, Grambling had overstaffed programs, a huge operating deficit, and a drop in student enrollment. Phased-in freezes were put into effect.
Due to Dr. Favor's refusal to either submit the proposal to the Board of Trustees for approval or to reappoint him as the assistant director of planning and analysis, Mr. McJamerson filed the instant suit asserting breach of contract by Grambling. The trial court rejected Mr. McJamerson's claims upon finding no binding contract as to Grambling. The trial court reasoned that both administrative positions at issue were "at will" positions subject to the discretion of the university's president. Dr. Hicks never appointed Mr. McJamerson to the new position or reinstated him to his prior position of assistant director of planning and analysis. As such, Dr. Favors was free to exercise discretion as to Mr. McJamerson's employment. Furthermore, the trial court reasoned that because Mr. McJamerson knew that administrative positions were "at will" positions subject to the discretion of the acting president, he could not have reasonably relied upon the representations made by Dr. Hicks with regard to his employment in such positions. Mr. McJamerson appeals this adverse judgment.

DISCUSSION
Mr. McJamerson argues on appeal that the issue is not one controlled by the "at will" employment doctrine. Instead, it simply involves whether Grambling can fail to uphold an agreement entered into by its former president who had authority to appoint personnel to the unclassified, administrative positions. Mr. McJamerson also argues that it was reasonable for him to rely on Dr. Hicks' promises regarding his employment.
A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished. La. C.C. art. 1906. The four elements required for a lawful contract are capacity, consent, a certain object, and a lawful purpose. La. C.C. arts. 1918, 1927, 1966, and 1971; Fairbanks v. Tulane University, 98-1228 (La.App. 4th Cir. 3/31/99), 731 So.2d 983. Additionally, a party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. La. C.C. art. 1967; Fairbanks v. Tulane University, supra. Even if a contract existed between Mr. McJamerson and Dr. Hicks, such a contract must be viewed in the context of the "at will" employment doctrine since the cause of the contract involves the appointment of Mr. McJamerson to an unclassified administrative or "at will" position.
Under the employment at will doctrine, employment is for an indefinite term and is terminable at the will of either the employer or employee. Absent a specific contract or agreement establishing a fixed term of employment, an employer is free to dismiss an employee at any time and for any reason without incurring liability. Tolliver v. Concordia Waterworks Dist. No. 1, 98-449 (La.App. 3rd Cir. 2/10/99), 735 So.2d 680, writ denied, 99-1400 (La.7/2/99), 747 So.2d 23; Williams v. Delta Haven, Inc., 416 So.2d 637 (La.App. 2d Cir.1982). The presumption of employment at will can be overcome as the at will relationship can be contractually altered. Page v. Grambling State University, 31,240 (La.App.2d Cir.12/9/98), 722 So.2d 329.
The essence of Mr. McJamerson's claim is that, based on his agreement with Dr. Hicks, he resigned from one administrative position to obtain another administrative position as director of a new scholars' program if such a program was approved. If the new program was not approved, then Dr. Hicks would appoint Mr. McJamerson back to the "at will" administrative position *171 of assistant director of planning and analysis. There was no evidence that the program proposed by Mr. McJamerson had been approved. Mr. McJamerson candidly admitted at trial that he knew administrative positions are "at will" appointments made at the discretion of the acting president, that he could be appointed or removed from such positions at any time by the president, and that even if he had been appointed by Dr. Hicks as director of the new scholars' program, there was a "possibility" that the new president could have disbanded the program. These are uncontested facts which defeat Mr. McJamerson's claim. We fail to see any basis to enforce an agreement to appoint an employee to an at will position from which he could be discharged at any time and without any reason. The agreement between Dr. Hicks and Mr. McJamerson does not alter the at will employment relationship such as by guaranteeing employment for any length of time. Furthermore, Mr. McJamerson does not present any authority for binding the university to an agreement between himself and a former president for an at will, unclassified, nontenured, administrative position.
An analogous issue was presented in Gottlieb v. Tulane University of Louisiana, 529 So.2d 128 (La.App. 4th Cir.1988), writ denied, 532 So.2d 766 (La.1988), in which the plaintiff was hired by the university with a promise by the chancellor that she would obtain tenure in four years. When Tulane failed to award tenure, the plaintiff filed suit. The jury denied her claim for relief. The plaintiff argued on appeal that the chancellor possessed the apparent authority to promise tenure and that she reasonably relied upon his promise when she accepted employment with Tulane Medical School. The appellate court rejected this contention upon finding that the plaintiffs reliance on the chancellor's promise was not reasonable. Factors influencing the court's conclusion included the plaintiffs familiarity with the workings of the tenure system in higher education and her understanding that budgetary considerations would affect faculty appointments.
Here, too, any reliance by Mr. McJamerson on Dr. Hicks' representations was unreasonable in light of Mr. McJamerson's knowledge regarding the nature of the unclassified, administrative positions at the university. While Dr. Hicks did have authority to appoint Mr. McJamerson to an unclassified administrative position, he did not do so prior to leaving the office of president. Upon the appointment of Dr. Favors as the new president of the university, it became his prerogative to establish new programs and appoint faculty to the unclassified, administrative positions. Mr. McJamerson was aware that any programs implemented or appointments made by Dr. Hicks could be changed by a future president.
Applying the manifest error standard, we find no error in the trial court's judgment and well-reasoned ruling. Mr. McJamerson testified that "it was extremely crazy" at the university during the time prior to Dr. Hicks' leaving. It is unfortunate that Mr. McJamerson was adversely affected by the changes at Grambling, but we find no merit to his claim for relief. The judgment of the trial court is hereby affirmed at appellant's cost.
AFFIRMED.